IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JRMAR "JJ" JEFFERSON,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:24-CV-3065-L-BN** |
| | § | |
| **GREG ABBOTT** (in his official capacity); | § | |
| **JANE NELSON, Secretary of State** | § | |
| **of Texas** (in her official capacity); | § | |
| **CHRISTINA ADKINS, Director of** | § | |
| **Elections** (in her official capacity [and | § | |
| individual capacity]; **GILBERTO** | § | |
| **HINOJOSA, Chair of the Texas** | § | |
| **Democratic Party** (in his official and | § | |
| individual capacity); **JASMINE FELICIA** | § | |
| **CROCKETT, Candidate for U.S.** | § | |
| **Representative District 30; KARDAL** | § | |
| **COLEMAN, Chair of the Dallas County** | § | |
| **Democratic Party** (in his official and | § | |
| individual capacity); **and CRYSTAL** | § | |
| **GAYDEN, Chair of the Tarrant County** | § | |
| **Democratic Party** (in her official and | § | |
| individual capacity), | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

On July 20, 2025, the Findings, Conclusions and Recommendation of the United States

Magistrate Judge ("Report") (Doc. 42) was entered, recommending that the court dismiss the

election related claims brought in this case by pro se Plaintiff Jrmar "JJ" Jefferson ("Plaintiff" or

"Mr. Jefferson") against certain Defendants. Specifically, the magistrate judge recommends that

the court grant the Motion to Dismiss by Jasmine Crockett (Doc. 29) to the extent based on service

and dismiss without prejudice the claims against her for lack of personal jurisdiction.

Alternatively, or in addition, the magistrate judge recommends that the court grant the Motions to

Dismiss by Kardal Coleman (Doc. 19) and Jasmine Crockett (Doc. 29) and dismiss with prejudice the claims asserted against these Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6) unless Plaintiff files timely objections to the Report that establish a basis to amend and alleges a plausible claim or claims against these Defendants. The magistrate judge further recommends that the court grant the Motions to Dismiss filed by Jane Nelson and Christina Adkins (Doc. 21) and dismiss without prejudice for lack of subject matter jurisdiction, based on Eleventh Amendment immunity, the claims asserted by Plaintiff against these Defendants in their official capacities. Finally, the magistrate judge recommends that the court deny Plaintiff's Motion to Set Aside His Voluntary Nonsuit with respect to Governor Greg Abbott (Doc. 38).

On August 4, 2025, Plaintiff filed objections (Doc. 43) to the Report, to which Defendant Jasmine Crockett responded on August 19, 2025 (Doc. 44). Plaintiff's objections include a request for a hearing. His objections also include a request to amend his pleadings to cure pleading defects and a request for an additional opportunity to show that service as to Defendant Crockett was adequate or, if not adequate, to cure service defects. For the reasons herein explained, the magistrate judge's findings and conclusions (Doc. 42) are **accepted in part and rejected in part to the extent set forth in this memorandum opinion and order**; Plaintiff's objections (Doc. 43) to the Report are **overruled**; Plaintiff's requests for a hearing and to amend his pleadings and cure pleading and service defects are **denied**. The court also **overrules** the objection (Doc. 37) Plaintiff filed on February 13, 2025, in response to the pro hac vice application filed by Jasmine Crockett's counsel (Doc. 33), which was granted by the magistrate judge (Doc. 36).

## I.    Background

In previously denying a request by Plaintiff for an *ex parte* restraining order, the court described the parties and Plaintiff's claims as follows:

Jrmar "JJ" Jefferson ("Plaintiff"), who is proceeding pro se, brought this action on December 6, 2024, against Greg Abbott, Governor of Texas (in his official capacity); Jane Nelson, Secretary of State of Texas (in her official capacity); Christina Adkins, Director of Elections (in her official); Gilberto Hinojosa, Chair of the Texas Democratic Party (in his official and individual capacity); Jasmine Felicia Crockett, Candidate for U.S. Representative District 30; Kardal Coleman, Chair of the Dallas County Democratic Party (in his official and individual capacity); and Crystal Gayden, Chair of the Tarrant County Democratic Party (in her official and individual capacity) (collectively, "Defendants"). In his Complaint, Plaintiff alleges that Defendants violated the United States Constitution and the Texas Election Code when they: (1) improperly rejected his candidacy and removed him from the ballot after Jasmine Crocket challenged his candidacy; and (2) accepted Jasmine Crockett's application and candidacy to appear as a Democratic Party candidate on the primary ballot for the United States Representative in District 30. He contends that Jasmine Crockett lacked standing to challenge his candidacy, and her certification as a candidate was fraudulent, violated various election laws, and undermined the constitutional rights of voters to directly elect their representatives. He asserts that Jasmine Crockett's candidacy and certification were unlawful because she failed to comply with certain procedural requirements such as the requirement that applications be signed, sworn, and notarized in Texas before a Texas notary (as opposed to another state).

Doc. 8. The court's description of the parties was based on the first page of Plaintiff's Complaint. In revisiting Plaintiff's Complaint, the court noticed that, although Plaintiff indicates on page one in the style of the case that he is only seeking relief against Defendant Christina Adkins in her official capacity as the Director of Elections for the Secretary of State, he later alleges in the body of his Complaint that he is suing her in "her official and individual capacities." Doc. 3 at 5.

Plaintiff summarizes the legal bases for the claims asserted in his Complaint as follows without identifying which Defendant engaged in the conduct alleged:

1. **Article I, Section 4 (The Election Clause):** Defendant's actions undermine the constitutional requirement for lawful elections for federal office.
2. **Equal Protection Clause (Fourteenth Amendment):** Certifying unlawful votes and allowing the inclusion of an ineligible candidate denies Plaintiff and voters the right to a fair election.
3. **Due Process Clause (Fourteenth Amendment):** Plaintiff was arbitrarily denied ballot access while an ineligible candidate was certified, violating his substantive and procedural due process rights.
4. **42 U.S.C. § 1983:** Plaintiff seeks relief to address ongoing violations of federal law and constitutional rights by state officials acting under color of state law.

Federal courts have jurisdiction to ensure compliance with constitutional election standards in congressional elections and to remedy violations of federal law and constitutional rights.

Federal courts have the authority to enjoin state officials and provide declaratory relief when their actions violate federal law or constitutional guarantees:

6. **Violation of Article I, Section 4 - The Election Clause:**
   Defendant Jasmine Crockett's candidacy violates the Election Clause by undermining the "Times, Places and Manner" of holding elections as prescribed by law. Allowing an ineligible candidate to remain on the ballot nullifies lawful election procedures and renders the results invalid. Plaintiff, as the only lawful candidate, is entitled to be declared the winner.

7. **Violation of Equal Protection (Fourteenth Amendment):**
   Certifying the candidacy of an ineligible candidate dilutes lawful votes and denies Plaintiff and voters the right to a fair election.

8. **Violation of Due Process (Fourteenth Amendment):**
   The arbitrary rejection of Plaintiff's lawful application, combined with the inclusion of an ineligible candidate, constitutes procedural and substantive due process violations.

9. **Violation of Federal Election Law:**
   Under federal law, votes cast for an ineligible candidate are invalid. Federal intervention is warranted to enforce compliance with the law, ensuring that the only lawful votes are recognized.

10. **Fraudulent Benefit:**
    Legal maxims and case law affirm that no one may benefit from fraud. Defendant Crockett's candidacy was marred by procedural violations, false certifications, and concealment of these violations, requiring judicial correction to restore the integrity of the election.

Doc. 3 at 27-28.

In his Complaint, Plaintiff also summarizes the relief sought by him in this action as follows:

1. **Injunctive Relief to Halt Certification:**
   - Issue an injunction prohibiting the Governor and Secretary of State from certifying the District 30 Congressional race until compliance with constitutional and statutory requirements is achieved.

2. **Injunctive Relief to Review and Rescind Improper Certifications:**
   - Prohibit the issuance of certificates of election for District 30 until Defendant Crockett's candidacy is reviewed and deemed compliant.
   - Rescind any certificates already issued to Defendant Crockett.

- Require written notification to Defendant Crockett of her disqualification.

**3. Declaratory Relief:**
- Declare that Defendant Jasmine Crockett's candidacy is non-compliant with federal and state law and order her disqualification.
- Declare Plaintiff Jrmar "JJ" Jefferson as the only lawful candidate for U.S. Congressional District 30 and the rightful winner of the election.

**4. Nullify All Related Certifications:**
- Declare any certifications, actions, or election results reflecting Defendant Jasmine Crockett's candidacy as null and void.

**5. Award Costs and Fees:**
- Award Plaintiff reasonable costs and fees under **42 U.S.C. § 1988**.

**6. Grant Further Relief:**
- Provide such other and further relief as this Court deems just and proper to safeguard Plaintiff's rights, restore electoral integrity, and uphold the rule of law.

Doc. 3 at 29.

Plaintiff sued Kardal Coleman, the Chair of the Dallas County Democratic Party in his official and individual capacities. In his Complaint, Plaintiff alleges that Defendant Coleman "played a role in the administration and certification of Democratic candidates in Dallas County." Doc. 3 ¶ 6. On January 24, 2025, Defendant Coleman moved to dismiss all claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff did not file a response to Defendant Coleman's Motion to Dismiss or seek an extension of time to do so.

Plaintiff sued Christina Adkins in her official capacity as the Director of Elections for the Secretary of State who is responsible for "oversee[ing] the implementation and interpretation of election-related regulations and provided advice to designees about the handling of Plaintiff's candidacy." Doc. 3 at 5. As indicated, Plaintiff also sued Defendant Adkins in her individual capacity. Jane Nelson was sued by Plaintiff in her official capacity as Texas Secretary of State "serv[ing] as the chief election officer of Texas, tasked with enforcing elections laws and ensuring uniform compliance under Tex. Elec. Code § 31.003." Doc. 3 at 4-5. On January 27, 2025, Defendants Adkins and Nelson jointly moved to dismiss the claims against them in their official capacity pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on Eleventh

Amendment immunity grounds.  Plaintiff did not respond to the Motion to Dismiss filed by Defendants Nelson and Adkins or seek an extension of time to do so.

Plaintiff sued Jasmine Crockett in her individual capacity, alleging that she "submitted a non-compliant ballot application, improperly certified by the Democratic Party, in violation of the Texas Election Code and constitutional mandates" such that she was or should have been disqualified from being placed on the ballot because her "fraudulent actions invalidate[d] her candidacy and all related actions."  Doc. 3 at 5, 6, 14, 17.  In addition, Plaintiff alleges that Defendant Crockett's challenge to his petition was baseless and failed to detail how his petition violated the Texas Election Code's requirements for form, content, or procedural requirements. *Id.* at 6. Plaintiff alleges that Defendant Crockett and her legal team not only exploited "procedural violations" to "disenfranchise [him] and the voters who supported his candidacy," *id.* at 23, but also that she made fraudulent misrepresentations regarding his petitions, "continued campaigning under false pretenses, and fabricated challenges," and that such conduct "constitute[s] election fraud under Tex. Elec. Code § 276.019 and Tex. Pen. Code § 37.10."  *Id.* at 17.  According to Plaintiff, Defendant Crockett lacked standing to contest his candidacy under section 141.034 of the Texas Election Code, and his "removal ensured that [Jasmine] Crockett could proceed without meaningful competition, despite her failure to comply with statutory requirements for candidacy." *Id.* at 22.

Plaintiff further alleges that, without judicial intervention, Defendant Crockett will "unlawfully benefit from a fraudulent process, "irreparably harming [him] and District 30 voters." *Id.* In this regard, Plaintiff alleges as follows:

> The actions of the filing authority, its designees, and Defendant Crockett have deprived the people of Congressional District 30 of their constitutional right to choose their representative. Instead of allowing the people to decide through a fair

electoral process, the designees have manipulated the system to elevate Crockett to
a position of advantage, effectively choosing the representative themselves.

*Id.* at 20, 26.  Plaintiff contends that such actions "were arbitrary, ultra vires, and intended to favor

Defendant Jasmine Crocket" in violation of his First Amendment right to associate with voters in

the Democratic primary and denied his supporters the opportunity of voting for their preferred

candidate in violation of Article I, Sections 2 and 4 of the United States Constitution.  *Id.* at 19-

20, 23, 26.  He likewise alleges that the "filing authority, its designees, and Defendant Crockett"

engaged in "coordinated actions" that resulted in his removal from the ballot in violation of the

Texas Election Code.  *Id*. at 23.

Finally, Plaintiff alleges that Defendant "Crockett's continued campaigning and

fundraising under fraudulent pretenses further exacerbated the harm to [his] candidacy and

reputation."  *Id.* at 24.  Plaintiff contends that Defendant Crockett, "through  fraudulent actions

and procedural violations facilitated by Defendants Gilberto Hinojosa, Brenda Cruz, and Johanna

Contreras, was unlawfully certified despite her non-compliance with statutory requirements." *Id.*

at 30.

On February 5, 2025, Defendant Crockett moved to dismiss all claims by Plaintiff against

her in her individual capacity, arguing that she was not served with process as required by

applicable law, and Plaintiff has failed to state any plausible claims for relief against her.  Plaintiff

did not file a response to Defendant Crockett's Motion to Dismiss or seek an extension of time to

do so.

As noted, however, Plaintiff moved to set aside his Notice of Voluntary Nonsuit against

Governor Abbott on February 27, 2025, to which Governor Abbott responded on April 3, 2025,

before the magistrate judge issued his Report with respect to Plaintiff's Motion and the three

Motions to Dismiss filed by Defendants Coleman, Adkins, Nelson, and Crockett.

## II.    Plaintiff's Objections to the Report

After the magistrate judge recommended that the court grant the Motions to Dismiss filed by Defendants Coleman, Adkins, Nelson, and Crockett, and recommended that the court deny Plaintiff's request to set aside his Notice of Voluntary Nonsuit as to Defendant Abbott, Plaintiff filed ten primary objections[1] to the Report. His objections consist of 40 pages of briefing and a 944-page Exhibit. Specifically, Plaintiff objects to the magistrate judge's: (1) "mischaracterization and misapplication of law regarding jurisdiction"[2] with respect to Defendant Crockett; (2) "failure to address and apply [the] law to [his] fraud claims and constitutional discrimination claims";[3] (3) "improper denial of [his] Rule 60(b) Motion, [defense motions amount to] fraud upon the court [that did not require a response by him], and due process violations [resulting from denial of Rule 60(b) Motion without addressing the fraud upon the court]"; (4) "*sua sponte* introduction of [sovereign immunity under the] Eleventh Amendment, service of process, and general Rule 12(b)(6) defenses not raised by Defendants" in addressing the Motions to Dismiss filed by Defendants Coleman and Crockett without notice to him and failure to accept well-pleaded facts in his Complaint as true; (5) "erroneous acceptance of [Defendant] Coleman's 'no role' [argument is] contradicted by Public Information Act evidence"; (6) "erroneous application of Eleventh Amendment immunity and mischaracterization of relief sought against [Defendants] Nelson and Adkins"; (7) "erroneous dismissal of claims against Jasmine Crockett under Rules 12(b)(5) and 12(b)(6)"; (8) "improper recommendation to dismiss without granting leave to amend"; (9)

---

[1] Plaintiff's objections are numbered one through twelve; however, there is no objection number six and no objection number four. Instead, his objections skip from "Objection No. 3" to "Objection No. 5" and from "Objection No. 5" to "Objection No. 7."

[2] In his objections to the Report, Plaintiff used all capital letters to highlight these objections. In summarizing these objections, the court sees no need to similarly use all uppercase letters and does not do so.

[3] Plaintiff's Complaint contains no reference to discrimination.

**Memorandum Opinion and Order – Page 8**

"mischaracterization of [his] Notice of Nonsuit and knowledge of [Defendant] Abbott's refusal" to publicly certify the election results as required by 2 U.S.C. § 382; and (10) "*sua sponte* judicial fact-finding and introduction of unbriefed legal theories" at the pleading stage. The court addresses the grounds for these objections in more detail in connection with the parties' respective Motions and the magistrate judge's recommendation regarding each Motion.

## III.    Rule 12(b)(6) Motion to Dismiss by Defendant Coleman (Doc. 19)

In his Motion to Dismiss, Defendant Coleman asserts that all of Plaintiff's claims against all Defendants in this action pertain to the allegedly wrongful: (1) "certification of Crockett for the primary ballot"; (2) "removal of Jefferson from that same ballot"; and (3) "the purported failure to provide Jefferson with sufficient notice of the challenges to his ballot eligibility." Doc. 19 at 1. Defendant Coleman moved to dismiss all claims against him in his individual and official capacities pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that: (1) the allegations in Plaintiff's Complaint are insufficient to satisfy Rule 8's liberal pleading standard and fail to allege any plausible claims against him; and (2) any claim by Plaintiff against him regarding his or Defendant Crockett's certification fails as a matter of law.

With respect to the first argument, Defendant Coleman contends that Plaintiff must provide more than labels and conclusions and formulaic allegations to state plausible claims for relief. Defendant Coleman asserts that Plaintiff's Complaint is devoid of any factual allegations concerning him and merely alleges in identifying the parties that he "played a role in the administration and certification of Democratic candidates in Dallas County." *Id.* at 2 (quoting Doc. 1 at 5). Because of the absence of any factual allegations against him, Defendant Coleman contends that he is entitled to dismissal of all claims by Plaintiff in this action against him.

With respect to his second argument, Defendant Coleman similarly contends that he is entitled to dismissal with prejudice of all claims against him because Plaintiff never alleges that he engaged in any wrongful conduct.  According to Defendant Coleman, the reason Plaintiff does not do so is quite simple: "[T]he congressional district at issue encompasses two counties, meaning ballot eligibility was determined exclusively by state—not county—party officials." Doc. 19 at 1. Thus, Defendant Coleman contends that "[b]y statute, [he] played no role—could not have played any role—in [Plaintiff's] removal or Crockett's certification" because he is a county party official. *Id.*

Regarding this argument, Defendant Coleman asserts that Plaintiff acknowledges that "decisions concerning certification for the primary ballot were made by ***state*** party officials,"[4] and his claims concern the 30th Congressional District, which "embraces portions of both Dallas and Tarrant [C]ounties." Doc. 19 at 3 & n.3.  For support that Congressional District 30 includes geographical areas within both Dallas and Tarrant Counties, Defendant Coleman cites to "[a]n official government record showing the districts [in Texas]."[5] Defendant Coleman, therefore, contends that he could not have played and did not play a role in the certification of the candidates for this district because, "[b]y statute, the authority to certify or decertify candidates for [this district] fell exclusively with the state—not county—party officials" under section 172.022(a)(1) of the Texas Election Code.

The magistrate judge agreed with Defendant Coleman and recommended that the court grant Defendant Coleman's Motion to Dismiss pursuant to Rule 12(b)(6) given the lack of factual allegations in Plaintiff's Complaint against Defendant Coleman and the authority under the Texas

---

[4] Doc. 19 at 3 n.2 (citing Pl.'s Compl. at 7 ¶¶ 2-3; Pl.'s Compl. at 8 ¶6; and Pl.'s Compl. at 14 ¶ 2).

[5] Doc. 19 at 3 n.3. (citing https://redistricting.capitol.texas.gov/docs/20RXXXX_118th_Congressional_Tabloid.pdf).

Election Code provided to state rather than county officials to certify or decertify electoral candidates:

> As chair of the Dallas County Democratic Party, Coleman asserts that he played no role—nor could he play a role under applicable law—as to Jefferson's removal from the ballot or Crockett's certification since Jefferson alleges that those decisions were made by state, not local, officials. *See* Dkt. No. 19 at 5-7 (citing Dkt. No. 3 at 7, 8, 14); *see also id.* at 6 ("Jefferson does not make a single factual allegation concerning Coleman in the remainder of his complaint. To the contrary, he alleges explicitly and repeatedly that the decisions concerning certification for the primary ballot were made by state party officials. Indeed, after identifying Coleman as a defendant, Jefferson never mentions him again. The absence of any specific factual allegation against Coleman warrants dismissal of all claims against him.")] (cleaned up)); *id.* ("Jefferson's complaint concerns the 30th Congressional District. That district embraces portions of both Dallas and Tarrant [C]ounties. Coleman played no role in the certification of candidates for the 30th Congressional District. By statute, the authority to certify or decertify candidates for the 30th Congressional District fell exclusively with state—not county—party officials." [*Id.*] (citing TEX. ELEC. CODE ANN. § 172.022(a)(1); footnote omitted)).

Doc. 42 at 7.[6]

Plaintiff argues in his objections that the magistrate judge's reasons for recommending that the court grant Defendant Coleman's and the other Defendants' Motions to Dismiss improperly turn on grounds not raised by them, including a "sovereign-immunity discussion, broad service-of-process analysis, and [a] lengthy *Twombly/Iqbal* plausibility lecture." Doc. 43 at 15 (emphasis added). Plaintiff contends that Defendant Coleman's Motion to Dismiss "[f]ocused solely on state-action and § 1983 deficiencies; [and it] did not raise Eleventh Amendment or service-of-process defenses." Doc. 43 at 15. Plaintiff further asserts that the magistrate judge "wrongly conclude[d] [that] no plausible 1983 claim was stated" against Defendant Coleman because, "as the elected Dallas County Democratic Party Chair," Defendant Coleman "acts under color of state law when

---

[6] The citations to the record in the magistrate judge's Report are to the electronically generated page numbers that appear at the top of each page on documents filed electronically. The citations in this order are to the paragraph numbers within each document and/or the page numbers at the bottom of each document that the parties assigned to their respective filings.

conducting primaries under Texas Election Code 172.2222," and "[t]he record contains documentary proof that [he] coordinated with the Texas Democratic Party and Secretary of State regarding Plaintiff's removal, satisfying the state-actor requirement." Doc. 43 at 34 (citing *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001), for the conclusion that joint action is sufficient to state a claim under § 1983).

Contrary to Plaintiff's assertion, a magistrate judge may *sua sponte* raise and consider a ground for dismissal not urged by a defendant as long as the plaintiff has notice and an opportunity to respond, as was the case here. *See Jones v. City of Dallas*, 2025 WL 2491127, at *6 (Aug. 29, 2025) (concluding that "[a] magistrate judge's report and recommendation constitute[] sufficient notice and opportunity [to respond], as the parties can submit objections to the recommended findings and conclusions) (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998)). Neither Defendant Coleman's Motion to Dismiss nor the magistrate judge's Report, however, mentions immunity or service issues. Instead, these issues and related law are referenced in the Report in connection with the Motions to Dismiss filed by the other Defendants. Likewise, Defendant Coleman's Motion to Dismiss and the magistrate judge's analysis of Defendant Coleman's Motion to Dismiss do not specifically mention section 1983. In any event, because Plaintiff insists that resolution of Defendant Coleman's Motion to Dismiss and his claims against Defendant Coleman turn on legal authority applicable to section 1983, the court addresses section 1983 and related legal authority in addressing Plaintiff's objections and determining whether, as Plaintiff contends, that his pleadings are sufficient to satisfy the requirements for a section 1983 claim against Defendant Coleman.

Plaintiff also contends that the magistrate judge erred in adopting Defendant Coleman's argument that he "played no role" in the alleged conduct "without considering documentary

evidence obtained through a Public Information Act request that provides otherwise." *Id.* at 17.

According to Plaintiff, this documentary evidence in the form of January 14-15 e-mails shows that

Defendant Coleman "was actively informed of and participated in ballot-removal

communications." *Id.* In this regard, Plaintiff asserts:

- On January 14, Texas Democratic Party Primary Election Administrator Brenda Cruz emailed county chairs, including Coleman, instructing them to "make the appropriate changes to your ballots" following the rejection of Plaintiff's candidacy.

- On January 15, Coleman confirmed to Dallas County election staff that "these 2 candidates have been removed from the ballot per the Texas Democratic Party" and that a decision on Jefferson was "still pending"— showing his direct coordination with state party officials regarding the removal.

*Id.* at 18. Plaintiff further asserts that:

55. January 18, 2024 Dallas County ballot proof shows Plaintiff's name [was] removed from the District 30 race. This proof was circulated by Dallas County election officials with Coleman copied on the correspondence.

56. As Dallas County Democratic Party Chair, Coleman is a state actor when administering the party's primary elections. His statutory duties under TEX. ELEC. CODE §§ 31.001, 172.022, 172.028 include facilitating ballot preparation and implementing state-party directives. This authority necessarily implicates him in ballot changes, including Plaintiff's removal.

57. Plaintiff further alleges that Coleman's actions were retaliatory because Plaintiff was an opponent in the Dallas County Chair race. Such retaliatory exclusion from the ballot violates Plaintiff's First Amendment associational rights and Fourteenth Amendment equal protection rights.

58. The magistrate [judge]'s acceptance of Coleman's "no role" assertion without addressing the contradictory email and ballot-proof evidence constitutes clear error and deprived Plaintiff of due process. These facts, if credited, establish Coleman's personal participation in the constitutional violations alleged.

*Id.* at 18.

In addition, Plaintiff argues that the Report disregarded the allegations in his Complaint

"and supporting materials (including e[-]mail correspondence)" reflecting "direct involvement"

by Defendants Coleman and Crockett "in orchestrating the rejection of [his] ballot application."
Doc. 43 at 32.  According to Plaintiff, the magistrate judge "dismiss[ed] these allegations outright
without the required assumption of truth, in effect crediting defendants' counter-narratives as fact"
in contravention of Fifth Circuit authority.  *Id.* (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228,
232 (5th Cir. 2009)).  Plaintiff argues that the magistrate judge's legal basis for determining that
Defendant Coleman's Motion to Dismiss should be granted is premised on a section 1983 "state-
action issue" that cannot be decided "without record development" because "[w]hether
[Defendants] Coleman and Crockett acted 'under color of state law' is a fact-intensive question[,]
and, in "concluding they were purely private actors and lacked authority—without discovery or
[a] factual hearing—the magistrate [judge] improperly short-circuited the [necessary] joint-action
and delegated-authority inquiries[.] Doc. 43 at 32-33 (citing *Lugar v. Edmondson Oil Co.*, 457
U.S. 922, 939 (1982); *Smith v. Allwright*, 321 U.S. 649 (1944); and *Terry v. Adams*, 345 U.S. 461
(1953)). Plaintiff, therefore, contends that the court should allow his claims against Defendant
Coleman to proceed and reject the magistrate's finding's "at Doc. 42, pages 7-8, that Coleman
'played no role' in the removal of [his] candidacy."  Doc. 43 at 18-19.

      As a preliminary matter, Plaintiff did not make any of these legal arguments in response to
Defendant Coleman's Motion to Dismiss, as he did not file a response to Defendant Coleman's
Motion to Dismiss.  Plaintiff, instead, raised these and other legal arguments for the first time in
his objections to the magistrate judge's Report. Legal arguments raised for the first time in
response to a magistrate judge's report, however, are waived.  *See Benamou v. Wells Fargo Bank
Nat'l Assoc. for Carrington Mortg. Loan Trust*, 711 F. App'x 241, 242 (5th Cir. 2018) (quoting
*Freeman v. City of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998) ("[A] party who objects to the
magistrate judge's report waives legal arguments not made in the first instance before the

magistrate judge.")).  Accordingly, all legal arguments by Plaintiff with respect to the Motions to Dismiss filed by Defendants Coleman, Adkin, Nelson, and Crockett are **waived**, as he did not file a response to any of the Motions to Dismiss by these Defendants that included the legal arguments he now asserts in response to the magistrate judge's Report and recommendation.  *See id.* Even if not waived, the arguments fail for the reasons herein explained.

Plaintiff brought this action, pursuant to 42 U.S.C. § 1983, for alleged violations of constitutional law arising from his removal from the Democratic primary ballot and Defendant Crockett's inclusion on the Democratic primary ballot. Section 1983 establishes "a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States" by a person acting under color of state law. *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 & n.1 (1990) (quoting 42 U.S.C. § 1983)).[7] To state a valid claim for relief under § 1983, a plaintiff must allege: "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 & n.8 (5th Cir. 2004) (citing *Bush v. Viterna*, 795 F.2d 1203, 1209 (5th Cir. 1986).[8]  In any § 1983 action, the first question is "whether a federally secured right has been affected." *Bush*, 795 F.2d at 1209. The second question is "whether the alleged deprivation of a federal right has been accomplished by state action."  *Id.* The third question involves identifying "the state actor responsible for the violation," which is usually determined by "reference to state

---

[7] Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities, secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

[8] On pages 10 through 11 of his Report, the magistrate judge includes the elements for a claim under § 1983. *See* Doc. 42 at 10-11 (citing *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

law" because "states have virtually complete freedom to decide who will be responsible for such tasks, and therewith to determine who will be held liable for civil rights violations that occur in the course of carrying them out." *Id.*  Additionally, when a defendant is sued in his or her individual capacity, the plaintiff must allege that the defendant was either personally involved in the violation or there is some causal connection between the defendant's actions and the alleged violation. *James v. Texas Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (citation omitted).

Resolution of Defendant Coleman's Motion to Dismiss involves the third question—whether he, as the Chair of the Dallas County Democratic Party, was the person responsible under Texas law for reviewing Plaintiff's and Defendant Coleman's applications for placement on the Democratic primary ballot and determining whether all state requirements were met. As Plaintiff has sued Defendant Coleman in his official capacity, as well as his individual capacity, resolution of Defendant Coleman's Motion to Dismiss also involves the related issue of whether he was personally involved in this process and the determination that Plaintiff alleges resulted in the violations of his constitutional rights. While Plaintiff alleges in his Complaint that Defendant Coleman "played a role in the administration and certification of Democratic candidates in Dallas County," (Doc. 3 ¶ 6) conclusory allegations such as this regarding a defendant's involvement in an alleged violation are insufficient for individual liability purposes. *See Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002).

Further, for the reasons urged in Defendant Coleman's Motion to Dismiss and the magistrate judge's Report, any claim by Plaintiff against Defendant Coleman with respect to the determinations made regarding his and Defendant Crockett's placement on the Democratic primary ballot and any related notice fails as a matter of law.  As indicated, Defendant Coleman asserts that Congressional District 30 includes geographical areas within both Dallas and Tarrant

Counties. For support, he cites to "[a]n official government record showing the districts [in Texas]" located online at https://redistricting.capitol.texas.gov/ docs/20RXXXX_118th_Congressional_ Tabloid.pdf.

The court can and does judicially notice the fact that Congressional District 30 for the primary and general elections in question included portions of both Dallas and Tarrant Counties in Texas, as it is a fact that is not subject to reasonable dispute and is readily verifiable through either means specified in Federal Rule of Evidence 201.[9] Moreover, Mr. Jefferson does not dispute that Congressional District 30 for the elections in question included portions of both Dallas and Tarrant Counties. Instead, his decision to sue election officials from both Dallas and Tarrant County officials reflects his awareness of this fact.

Section 172.022 of the Texas Election Code states that "[a]n application for a place on the general primary election ballot must be filed with" either: "(1) *the state chair*, for an office filled by voters of *more than one county*; *or* (2) *the county chair* or the secretary, if any, of the county executive committee, for an office filled by voters of a *single county*." Tex. Elec. Code Ann. § 172.022(a)(1)-(2) (emphasis added). Section 172.0222 further provides that, "[o]n the filing of an application for a place on the general primary election ballot, *the authority with whom the application is filed shall review the application* to determine whether it complies with the requirements as to form, content, and procedure that it must satisfy for the candidate's name to be placed on the general primary election ballot." Tex. Elec. Code Ann. § 172.0222(b) (emphasis

---

[9] In ruling a Rule 12(b)(6) motion to dismiss, a court "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal quotation marks and citation omitted). Federal Rule of Evidence 201 provides that a "court may judicially notice a fact that is not subject to reasonable dispute" if the fact: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201 (b)(1)-(2).

added).  If an application does not comply with applicable statutory requirements, the person who reviewed the application notifies the candidate the reasons for the rejection.  *See id.* § 172.0222(g)

Congressional District 30 covers "more then one county" because it covers parts of both Dallas and Tarrant Counties.  *See* § 172.022(a)(1).  Thus, any applications by Plaintiff and Defendant Crockett would have had to have been filed with the Texas "state chair," not the "county chair," *see id.*, and the "state chair" would have had authority to review their applications, determine whether they complied with applicable requirements as to form, content, and procedure, and notify them if they did not comply with applicable requirements. *See* § 172.0222(b), (g). Plaintiff also acknowledges in his pleadings that Defendant Coleman was the Dallas County chair for the Democratic Party at the time in question. Thus, as a matter of law, Defendant Coleman was not the person with authority to review and make determinations under Texas law regarding Plaintiff's or Defendant Crockett's applications, and he could not have been responsible for any alleged constitutional violations of Plaintiff's rights arising from such determinations or subsequent notice.  *See Bush*, 795 F.2d at 1209; *cf. Raymond v. Bexar Cnty. Democratic Party*, 2017 WL 11831105, at *4-5 (W.D. Tex. Mar. 10, 2017).[10]

Consideration of the allegations in his Complaint against Defendant Coleman does not change this determination. As indicated, Plaintiff merely alleges in conclusory fashion in his

---

[10] In *Raymond*, the plaintiff sued Defendants Bexar County Democratic Party ("BCDP") and BCDP Chairman Manuel Medina to have his name placed on the Democratic Party primary ballot for District 117 of the Texas House of Representatives. *Raymond*, 2017 WL 11831105, at *1. In ruling on a Rule 12(b)(6) motion, the court in *Raymond* concluded that the plaintiff's section 1983 claim against BCDP and BCDP Chairman Manuel Medina should be allowed to proceed. *Id.* at *5.  In reaching this conclusion, the court in *Raymond* determined that, under Texas law, a county chair or its chairman is exercising a "public function" and thus qualifies as a state actor for purposes of section 1983 when he or she rejects an application for placement on the ballot. *Id.* at *4 (citing *Riddell v. National Democratic Party*, 508 F.2d 770, 774 (5th Cir. 1975), for the conclusion that "precinct elections and county nominating conventions constitute[] performance of public functions so as to give rise to state action for purposes § 1983, when party's actions 'complied insofar as they were able with state statutes governing the conduct of precinct elections and local nominating conventions'") (other citations omitted). The *Raymond* court's determination that the county chair, rather than the state chair, was responsible for reviewing applications in that case, however, turned on the fact that the 117th District consisted of voters in a single county. *Id.* at *4 (citing Tex. Elec. Code Ann. § 172.022(2)).

Complaint that Defendant Coleman "played a role in the administration and certification of Democratic candidates in Dallas County." Doc. 3 ¶ 6. While Plaintiff also alleges in his Complaint that he "seeks relief to address ongoing violations of federal law and constitutional rights by state officials acting under color of state law" pursuant to 42 U.S.C. § 1983, this allegation is similarly vague and too conclusory. Plaintiff correctly notes in his objections to the Report that the court must accept as true all well-pleaded factual allegations in a plaintiff's complaint and liberally construes a pro se plaintiff's pleadings. *See Kemp v. Powers*, 2025 WL 1898365, at *2 (5th Cir. July 9, 2025) (citing *Doe v. Charter Commc'ns, L.L.C.*, 131 F.4th 323, 328 (5th Cir. 2025)). On the other hand, it is well established that courts need not and "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" in ruling on a Rule 12(b)(6) motion. *Kemp*, 2025 WL 1898365, at *2 (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)); *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (reasoning that conclusory allegations will not suffice to prevent dismissal); *Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (concluding that a plaintiff must plead specific facts, not conclusory allegations, to avoid dismissal); *Drs. Bethea, Moustoukas v. St. Paul Guardian Ins.*, 376 F.3d 399, 403 (5th Cir. 2004) (explaining that conclusory allegations or legal conclusions masquerading as factual conclusions are not sufficient to prevent dismissal); *Jones v. Alcoa Inc.*, 339 F.3d 359, 363 n.4 (5th Cir. 2003) (explaining that "conclusory allegations or unwarranted deductions of fact" are not accepted as true).

Moreover, these and the other pleadings in Plaintiff's Complaint violate the rule against "group pleading." As explained by the Fifth Circuit in *Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023), "a § 1983 plaintiff 'must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* at 274-75 (5th Cir. 2023)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); and citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004), for the conclusion that "[w]e do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the [illegal conduct] is specifically pled.").

Even considering the additional allegations in Plaintiff's objections, they fare no better because his assertions—that Defendant Coleman "is a state actor when administering the party's primary elections [as a Dallas County Democratic Party Chair]"; that "[h]is statutory duties under TEX. ELEC. CODE §§ 31.001, 172.022, 172.028 include facilitating ballot preparation and implementing state-party directives"; and that his "actions were retaliatory because Plaintiff was an opponent in the Dallas County Chair race"—are similarly conclusory and do not account for the fact that, by statute, review of ballot applications for Congressional District 30 was done by the state chair rather than the county chair because this district encompassed two counties at the time in question. Thus, these new allegations do not change the fact that Defendant Coleman lacked authority under sections 172.022(a)(1) and 172.0222(b) of the Texas Election Code to review Mr. Jefferson's or Defendant Crockett's applications and decide whether their applications complied with statutory requirements. His citation to sections 31.001 and 172.028 of the Texas Election Code do not help him, as these apply to the state chair and secretary of state as the chief election officer of the state, not the county chair.

Additionally, although district courts have authority and discretion under Federal Rule of Civil Procedure 72(b)(3) to hear new evidence that was not presented to the magistrate judge, they may only consider the pleadings in ruling on a Rule 12(b)(6) motion. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citation omitted). As previously

explained, the pleadings consist of allegations in the complaint, attachments to the complaint, documents incorporated by reference into the complaint, and matters of which a court may take judicial notice. *Id.* Plaintiff recognizes as much, but he still asks the court to consider evidence submitted in connection with his objections that is not part of the pleadings. If Plaintiff wanted to rely on this evidence to support his claims, he could have and should have amended his pleadings once as a matter of course within 21 days after Defendant Coleman filed his Motion to Dismiss on January 24, 2025, and attached this evidence to his amended pleadings, or he could have sought leave to amend his pleadings before now. *See* Fed. R. Civ. P. 15(a). Plaintiff is obviously familiar with Rule 15(a) because he references it in his objections to the Report in support of his contention that he should be allowed to amend his pleadings before his claims against Defendants Coleman, Adkins, Nelson, and Crockett are dismissed.

In any event, the January 2024 e-mails relied on by Plaintiff do not plausibly support his conclusory assertion that Defendant Coleman was involved in an unlawful conspiracy or agreement to orchestrate the rejection of his candidacy, and there are no factual allegations in Plaintiff's Complaint or objections that would support a finding that Defendant Coleman and the state chair or persons at the state level with authority to make such decisions had an unlawful agreement to reject Plaintiff's application. [11] Instead, at most, the e-mails reflect that Defendant

---

[11] Some of the section 1983 cases cited in Plaintiff's objections, including *Lugar*, involve joint action by private actors. From this, Plaintiff appears to argue that Defendant Coleman qualifies as a private actor who engaged in joint action with state officials. In *Kemp*, the Fifth Circuit recently explained as follows regarding the joint action test:

> The Supreme Court has identified at least four tests to determine whether a private actor is acting under color of state law. *See Lugar*, 457 U.S. at 922; *Cornish* [*v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005)] (summarizing the tests).
>
> The joint action test examines whether the private actors are "willful participant[s] in joint action with the State or its agents." *Cornish*, 402 F.3d at 549-50 (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). "[T]o satisfy the joint action test for a private actor, a plaintiff must plead 'facts showing an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right, and that the private actor was a willing participant in joint activity with the state or its agents.'" *Hernandez v. Causey*, 124 F.4th

Coleman was aware that there had been a challenge to Plaintiff's application or qualifications, that a decision was made by state election officials to reject his application, and that Plaintiff was removed from the Democratic primary ballot "per the Texas Democratic Party." Doc. 43-1 at 1-5. As the magistrate judge correctly explained in his Report, for a claim to have "facial plausibility," a plaintiff must plead facts from which the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Doc. 42 at 5 (quoting *Iqbal*, 556 U.S. at 678)) (other citations omitted).  The allegations in Plaintiff's Complaint and objections do not contain sufficient factual content that would allow the undersigned to reasonably infer that Defendant Coleman is liable for the alleged misconduct concerning his and Defendant Crockett's applications.

Likewise, Plaintiff's general assertion—that Defendant Coleman qualifies as a state actor when administering the party's primary elections in his role as a Dallas County Democratic Party Chair—is quite beside the point because, as noted, he was not responsible under state law for reviewing Plaintiff's or Defendant Crockett's applications or deciding whether the applications complied with applicable requirements. As correctly noted by Defendant Coleman and the magistrate judge, Plaintiff seems to acknowledge as much because he alleges in his Complaint that certification decisions were made at the state level by Democratic state party officials and persons

---

325, 337 (5th Cir. 2024) (citation omitted). "Allegations that are merely conclusory, without reference to specific facts, will not suffice." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004) (citation omitted).

*Kemp*, 2025 WL 1898365, at *4. Neither Plaintiff's Complaint nor his objections to the Report contain any factual allegations showing an agreement of this kind to engage in a conspiracy to violate his constitutional right(s). For example, Plaintiff asserts in his objections that the January 2024 e-mails that Defendant Coleman sent, received, or was copied on show that he "facilitate[d] ballot preparation and implement[ed] state-party directives." Doc. 43 at 18. The facilitation and implementation of state-party directives and decisions, however, do not support a finding that Defendant Coleman conspired with and had an agreement with state party officials to reject Plaintiff's application and thereby deprive him of any constitutional right. Moreover, this and Plaintiff's other allegations and objections consist of conclusory assertions that are insufficient to support a finding of joint action even assuming that Defendant Coleman qualified as a private actor.

**Memorandum Opinion and Order – Page 22**

other than Defendant Coleman. *See* Doc. 3 at 7, 8, 14-15 (alleging that Defendant Gilberto Hinojosa was responsible for reviewing applications for compliance with statutory requirements but delegated this responsibility to Brenda Cruz and Joanna Contreras, who are not parties to this action).

Accordingly, for all of these reasons, the court determines that the findings and conclusions of the magistrate judge with respect to Defendant Coleman's Motion to Dismiss are correct, and **accepts** them, **as supplemented herein,** as those of the court. The court, therefore, **overrules** Plaintiff's objections to the Report with respect to Defendant Coleman's Motion to Dismiss, **grants** Defendant Coleman's Motion to Dismiss (Doc. 19), and **dismisses with prejudice** all claims by Plaintiff against Defendant Coleman.[12]

## IV.    Rule 12(b)(1) and (b)(6) Motion to Dismiss by Defendants Nelson and Adkins (Doc. 21)

Defendants Nelson and Adkins moved for dismissal of Plaintiff's official capacity claims against them under Rules 12(b)(1) and 12(b)(6). The court focuses on their Rule 12(b)(1) immunity argument, as this is the sole ground relied on by the magistrate judge in recommending the dismissal of Plaintiff's official capacity claims. Additionally, no objections to the Report were asserted by Defendants Nelson or Adkins, and the resolution of this issue will determine whether the court has jurisdiction over Plaintiff's official capacity claims against Defendants Nelson and Adkins.

Regarding this issue, the magistrate judge reasoned as follows:

"Sovereign immunity under the Eleventh Amendment precludes suits by private citizens against states in federal court." *Tawakkol v. Vasquez*, 87 F.4th 715, 718 (5th Cir. 2023) (citation omitted). . . . "[a]bsent waiver, the immunity of a state

---

[12] For the reasons herein explained in the section addressing Plaintiff's request to amend his pleadings, the court determines that Plaintiff has pleaded his "best case" with respect to Defendant Coleman, and allowing him to amend his pleadings and claims against Defendant Coleman would be futile and unnecessarily delay the resolution of this litigation.

**Memorandum Opinion and Order – Page 23**

from suit as signified by, but not fully expressed in, the Eleventh Amendment is a jurisdictional barrier." *Stramaski v. Lawley*, 44 F.4th 318, 321-22 (5th Cir. 2022) (citation omitted). That is because "[f]ederal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015) (cleaned up).

. . . .

Jefferson sues Nelson and Adkins in their official capacities. As such, he has sued Texas. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity [ ] should be treated as suits against the State.")[)](citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985))).

But Jefferson has not shown that an exception applies such that the Court may assert jurisdiction over Texas for the claims [he] brings against Nelson and Adkins in their official capacities.

For example, "the doctrine, first enunciated in *Ex parte Young*, 209 U.S. 123 (1908), . . . does not prevent federal courts from granting prospective injunctive relief against state officials to prevent a continuing violation of federal law because such conduct is not considered to be state action." *White v. Spikes*, No. 3:14-cv-389-M-BN, 2015 WL 3504524, at *3 (N.D. Tex. May 28, 2015) (cleaned up).

But Jefferson does not seek prospective injunctive relief.

As Nelson and Adkins explain, Jefferson is instead[:]

trying to reverse the outcome of the November 5, 2024 general election and receive declarations that he was the only lawful candidate to run in the Election, attempting to reverse decisions made up to 10 months prior by other parties to this lawsuit leading up to the March 5, 2024 primary election. Further, the injunctive relief that Plaintiff seeks—to prevent Governor Abbott from certifying the Election—already occurred before the statutory deadline. See TEX. ELEC. CODE § 67.012. Plaintiff states no claim for relief against Adkins, nor does he specify what relief, if any, he seeks from Adkins. The *Ex parte Young* doctrine does not permit declarations regarding past conduct. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) ("[T]he [*Young*] exception is narrow: It applies only to prospective relief, [and] does not permit judgments against state officers declaring that they violated federal law in the past."). As such, the *Ex parte Young* doctrine does not apply to Plaintiff's claims.

Dkt. No. 21 at 7; *see also Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 275 (5th Cir. 2020) ("[S]tate officials cannot be sued for violations of state law in federal court, even under the *Ex [p]arte Young* exception."[)] (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984))).

The Court should therefore dismiss the claims against Nelson and Adkins for lack of subject matter jurisdiction.

Doc. 42 at 3, 7-9.

Mr. Jefferson objects to this recommendation, contending that the exception in *Ex parte Young* applies because, contrary to the magistrate judge, his Complaint includes a request for prospective relief based on ongoing constitutional violations, and immunity does not shield a defendant from actions taken in bad faith or in violation of the official's oath of office. In particular, Plaintiff contends that the relief sought by him in this action falls squarely within the *Ex parte Young* exception to immunity because his Complaint includes the following requests for prospective relief:

- Prospective injunctive relief requiring the Governor, Secretary of State, and Director of Elections to comply with federal and state election laws before certifying candidates and election results;

- Declaratory relief that the removal of Plaintiff from the March 5, 2024 Democratic primary ballot violated constitutional and statutory provisions; and

- Judicial review to ensure future compliance and prevent repetition of unlawful practices.

Doc. 43 at 20. Plaintiff contends that the *Ex parte Young* exception to immunity also applies because his Complaint includes allegations that Defendants Nelson and Adkins continue to violate his constitutional rights by:

- Refusing to correct Plaintiff's ballot status from "rejected" back to "accepted" despite no court order requiring removal after certification on December 20, 2023;

- Refusing for over a year to produce documents in the Secretary of State's custody that would confirm fraud in the candidate-certification process;

- Enforcing certification affidavits from political parties that falsely stated all certified candidates were compliant when Jasmine Crockett was not.

*Id.*

Plaintiff also takes issue with the magistrate judge's determination that his Complaint "states no claim for relief" against Defendant Adkins.  According to Plaintiff, his Complaint alleges that Defendant Adkins ignored her statutory duties under section 31.003 of the Texas Election Code to oversee implementation of election law and advise officials on candidate-qualification disputes.  In addition, Plaintiff asserts that he "specifically alleged" that Defendants Adkins and Nelson "acted jointly with state-party officials to remove [him] from the ballot without lawful authority." Doc. 43 at 21. Plaintiff, therefore, contends that his claims against these Defendants for prospective and declaratory relief should be allowed to proceed.

"A . . . prerequisite of *Ex parte Young* is that 'the relief sought must be declaratory or injunctive in nature and prospective in effect.'" *NiGen Biotech, L.L.C.*, 804 F.3d at 394 (quoting *Saltz v. Tennessee Dep't of Emp. Sec.*, 976 F.2d 966, 968 (5th Cir. 1992). Thus, only injunctive and declaratory claims based on an "ongoing violation of federal law"—in other words "that the defendant *is violating* federal law, not simply that the defendant has done so"—are sufficient to invoke *Ex parte Young*.  *NiGen Biotech, L.L.C.*, 804 F.3d at 394 (explaining that "[t]his requirement is similar but not identical to the Article III minimum for standing to request an injunction, which requires ongoing harm or a threat of imminent harm" that is not conjectural or hypothetical) (footnote and citations omitted); *see also Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 737 (5th Cir. 2020) ("[T]o comply with the dictates of *Ex parte Young*, plaintiffs[] . . . must allege that the defendants' actions are *currently* violating federal law.") (citations omitted). This is because the "*Ex parte Young* exception is 'focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one

time or over a period of time in the past[.]" *Calhoun v. Collier*, 78 F.4th 846, 851 (5th Cir. 2023), *as revised* (Aug. 31, 2023) (quoting *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986); and citing *Williams ex rel. J.E.*, 954 F.3d at 737).

As the magistrate judge and Defendants Nelson and Adkins correctly note, it necessarily follows that "state officials cannot be sued for violations of state law in federal court, even under the *Ex [p]arte Young* exception." Doc. 21 at 8 & Doc. 42 at 8-9 (quoting *Corn*, 954 F.3d at 275) (citing *Pennhurst State Sch. & Hosp.*, 465 U.S. at 106 (1984). As the Supreme Court in *Pennhurst* explained:

> Th[e] need to reconcile competing interests is wholly absent . . . when a plaintiff alleges that a state official has violated state law. In such a case the entire basis for the doctrine of *Young* . . . disappears. A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, *it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.* Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that *Young* . . . [is] inapplicable in a suit against state officials on the basis of state law.

*Id.* at 106 (emphasis added).

Plaintiff and Defendants Nelson and Adkins dispute whether Plaintiff's Complaint only asserts claims under state law for alleged violations of Texas Election Code as opposed to federal statutes and constitutional law, but neither side addresses this issue in any detail, and the magistrate judge did not base his determination that *Ex parte Young* does not apply on this ground. As indicated, Plaintiff and Defendants Nelson and Adkins also dispute whether the relief sought by Plaintiff is prospective in nature. The magistrate judge agreed with Defendants Nelson and Adkins without elaborating other than to quote their arguments. In "determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law

and seeks relief properly characterized as prospective." *Virginia Off. for Prots. and Advoc. v. Stewart*, 563 U.S. 247, 268 (2011) (citation omitted).

As Plaintiff identified in his objections to the Report the types of injunctive and declaratory relief sought that he contends are prospective for purposes of *Ex parte Young*, the court focuses on this relief rather than attempting to wade through his 44-page Complaint.[13] After conducting a "straightforward inquiry into whether [the relief identified in Plaintiff's objections] alleges an ongoing violation of federal law," the court concludes that it does not. Alternatively, even if the relief sought qualifies as prospective, it does not involve a violation of federal law, or Plaintiff lacks Article III standing. The issue of standing was not raised by any of the parties to this action. Federal district courts, however, have an independent duty to raise the issue of subject matter jurisdiction even if it is not raised by the parties. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005).

Plaintiff's request for—(1) "[d]eclaratory relief that the removal of Plaintiff from the March 5, 2024 Democratic primary ballot violated constitutional and statutory provisions"; (2) declaratory or injunctive relief to address the "[r]efus[al] to correct [his] ballot status from 'rejected' back to 'accepted' despite no court order requiring removal after certification on December 20, 2023"; and declaratory or injunctive relief with respect to the "[e]nforc[ement of] affidavits from political parties that falsely stated all certified candidates were compliant when Jasmine Crockett was not" (Doc. 43 at 20)—all involve retroactive relief for violations of the Texas Election Code that allegedly occurred in the past in connection with the Texas Democratic primary and the November 2024 general elections. "*Ex parte Young*[, however,] does not extend

---

[13] To the extent Plaintiff contends that other relief in his Complaint qualifies as prospective, he **waived and abandoned** any such argument and claim for relief by not urging it in his objections and not responding to the Motion to Dismiss filed by Defendants Nelson and Adkins.

**Memorandum Opinion and Order – Page 28**

to suits where the plaintiff seeks retroactive relief." *Virginia Off. for Prots. and Advoc.*, 563 U.S. at 268. Thus, *even assuming* that these alleged violations support Plaintiff's claims for relief under federal law, they do not satisfy the *Ex parte Young* doctrine's requirement regarding an ongoing violation of federal law.

Next, Plaintiff does not explain why he believes that the Secretary of State's alleged "[r]efus[al] for over a year to produce documents" in her custody involves a violation of federal law as opposed to state law, which is insufficient because *Ex parte Young* does not apply to alleged "violations . . . based on state law." *Id.* at 268 (citation omitted).  Plaintiff's Complaint also does not include any claims against any Defendant for refusal to produce documents, although Plaintiff does argue in his objections to the Report that information he obtained via the Texas Public Information Act proves that Defendant Coleman played a role in the decision to remove him from the ballot.  The Texas Public Information Act, Tex. Gov't Code Ann. § 552.321(b), however, is a state statute. Moreover, this alleged violation occurred in the past and thus does not qualify as an ongoing violation of federal law as required for relief under *Ex parte Young*.

Finally, the court determines that Plaintiff lacks standing to pursue prospective injunctive relief "requiring the Governor, Secretary of State, and Director of Elections to comply with federal and state election laws before certifying candidates and election results"; or involving "[j]udicial review to ensure future compliance and prevent repetition of unlawful practices."  Doc. 43 at 20. To establish Article III standing, a plaintiff must allege "an injury in fact" that is "fairly . . . trace[able] to the challenged action of the defendant" and "redress[able] by a favorable decision." *Lujan v. Defenders. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citation modified). The injury-in-fact element "ensure[s] that the plaintiff has a 'personal stake in the outcome of the controversy.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted). An injury must be

"concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations and internal quotation marks omitted); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (same) (citation omitted).   Thus, a plaintiff's standing to pursue injunctive relief that is calculated to redress a future injury depends on whether that future injury is imminent, as opposed to merely conjectural. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010).   A plaintiff is not required to wait for an "actual violation[ ] of his rights" to seek relief.   *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 278 (5th Cir. 1996). An allegation regarding a future, threatened injury will suffice as long as the threatened injury is "*certainly impending* to constitute injury in fact[.]" *Clapper*, 568 U.S. at 409.   "[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law," however, "does not count as an 'injury in fact.' And it consequently does not show standing." *Carney v. Adams*, 592 U.S. 53, 58-59 (2020).

Even assuming that Plaintiff's reference to compliance with "state law election laws" for certifying candidates and election results involves a potential violation of federal law, his general requests for prospective injunctive relief to ensure future compliance with election laws and "prevent repetition of unlawful practices" (Doc. 43 at 20) amount to no more than "generalized grievance[s]" that do not satisfy the injury-in-fact element for Article III standing.   *Carney*, 592 U.S. at 58-59.   The Supreme Court has consistently held that "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74; *see also Pederson v. Louisiana State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000) ("A generalized grievance is a harm shared in substantially equal measure

by all or a large class of citizens.") (citation omitted).  "In other words, a plaintiff cannot establish standing by asserting an abstract 'general interest common to all members of the public,' . . . 'no matter how sincere' or 'deeply committed' a plaintiff is to vindicating that general interest on behalf of the public[.]" *Carney*, 592 U.S. at 59.

Further, Plaintiff does not allege in his Complaint or his objections to the Report that he is "able and ready" to apply to run again in a Democratic Party primary in the reasonably foreseeable future.  *See id.* (citations omitted). Instead, he complains only of his alleged disqualification in a prior Democratic Party primary.  Even assuming that such an allegation would suffice, *see id.* at 64-66, it is not readily apparent from the allegations in his Complaint or objections that his candidacy would be challenged again or whether he would be disqualified and removed again from a Democratic Party primary ballot in Texas.  Thus, the court cannot reasonably infer that any such injury is imminent as opposed to merely conjectural.

For the reasons explained, the court determines that none of the contentions by Plaintiff in his objections regarding alleged prospective injunctive or declaratory relief satisfies the *Ex parte Young* doctrine's requirement regarding an ongoing violation of federal law.  The court, therefore, agrees with the magistrate judge that Plaintiff's official capacity claims against Defendants Nelson and Adkins are barred by sovereign immunity under the Eleventh Amendment, and the court lacks jurisdiction over these claims.  Accordingly, the court determines that the findings and conclusions of the magistrate judge with respect to the Motion to Dismiss by Defendants Nelson and Adkins are correct, and **accepts** them, **as supplemented,** as those of the court; **overrules** Plaintiff's objections to the Report with respect to the Motion to Dismiss by Defendants Nelson and Adkins; **grants** the Motion to Dismiss by Defendants Nelson and Adkins (Doc. 21) to the extent based on

immunity and jurisdictional grounds; and **dismisses without prejudice** all official capacity claims by Plaintiff against Defendants Nelson and Adkin.[14]

## V.    Rule 12(b)(5) and (b)(6) Motion to Dismiss by Defendant Crockett (Doc. 29)

Defendant Crockett moved to dismiss all claims against her, arguing that she has not been properly served, and Plaintiff has failed to state any claim against her upon which relief can be granted.  Plaintiff did not file a response to Defendant Crockett's Motion to Dismiss or seek an extension of time to do so. The magistrate judge agreed that Defendant Crockett had not been properly served and, therefore, concluded that the court lacked personal jurisdiction over her.  As indicated, the magistrate judge also determined that dismissal was appropriate on Defendant Crockett's alternative ground for dismissal under Rule 12(b)(6). As the court agrees that it lacks jurisdiction over Defendant Crockett because she has not been properly served, and Plaintiff's objections are insufficient to overcome dismissal on this ground, the court focuses on this basis for dismissal and does not reach the alternative ground for dismissal under Rule 12(b)(6) or the parties' arguments regarding this ground.

With respect to the service issue, Defendant Crockett argues in her Motion to Dismiss:

> The Complaint [alleges] that Ms. Crockett is being sued "in her individual capacity." Docket No. 3, p. 5. Fed. R. Civ. P. 4(e) requires that service on an individual be made by following state law for serving a summons in state courts; delivering a copy personally; leaving a copy at the individual's "usual place of abode" with "someone of suitable age and discretion who resides there;" or delivering a copy to an agent authorized to receive service of process.

> Plaintiff has filed an "Affidavit . . . Regarding Service on Jasmine Crockett." Docket No. 16-1. The Affidavit is made and sworn [to] by Plaintiff himself—not a process server. The Affidavit asserts that Plaintiff's process server served the summons and complaint by email to a lawyer who had represented Ms.

---

[14] For the reasons explained herein in the section addressing Plaintiff's request to amend his pleadings, the court determines that Plaintiff has pleaded his "best case" with respect to his official capacity claims against Defendants Nelson and Adkins, and allowing him to amend his pleadings as to these claims would be futile and unnecessarily delay the resolution of this litigation.

Crockett in prior matters but who had not indicated he was authorized to accept service in this matter. *Id.* p. 2. The Affidavit further asserts that a process server delivered the documents to a staff assistant at Congresswoman Crockett's Dallas District Office, a staff assistant who purportedly said she was authorized to "accept documents" and that the documents would be forwarded to Ms. Crockett. *Id.* pp. 2-3.

Under state law, service on an individual must be made by personal service or certified mail, return receipt requested. Texas Rules of Civil Procedure 106(a). In addition, service can be made on an individual with an office in the county, by serving an agent or clerk in the office, but only if the action arises in the county and, if the individual is a resident of the county (as Ms. Crockett is) only if the individual "has not been found for service of process." The process server must certify that after diligent search the individual cannot be found and served. Tex. Civ. Practice & Remedies Code § 17.021(a) & (b).

In this case, the Affidavit does not aver that Ms. Crockett has not been found and there is no certification of any kind by any process server. Thus, service has not been accomplished in accordance with state law. Further, the Affidavit confirms that Ms. Crockett has not been served personally; nor has a copy been left with anyone residing at her place of abode.

Accordingly, Ms. Crockett has not been properly served in this action.

Doc. 29 at 2-3.

In his Report, the magistrate judge reasoned as follows and concluded that Defendant Crockett's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(5) should be granted, and Plaintiff's claims against her should be dismissed for lack of jurisdiction.

Both Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) "challenge the sufficiency of service of the summons and complaint." *Bernard v. Grefer*, Civ. A. No. 14-887, 2015 WL 13532582, at *1 (E.D. La. Mar. 17, 2015). "Rule 12(b)(4) challenges the form of the process and the contents of the summons, specifically its noncompliance with Rule 4(b)." *Id.* (citing *Gartin v. Pharm. Cos., Inc.*, 289 F. App'x 688, 691 n.3 (5th Cir. 2008) (per curiam)). While Rule 12(b)(5) "permits a challenge to the method of service attempted by the plaintiff, or the lack of delivery of the summons and complaint." *Naranjo [v. Universal Sur. of Am.,* 679 F. Supp. 2d 787, 795 (S.D. Tex. 2010)] (quoting Neely v. *Khurana*, No. 3:07-cv-1344-D, 2008 WL 938904, at *2 (N.D. Tex. Apr. 7, 2008)).

"Once the validity of service has been contested, the plaintiff bears the burden of establishing its validity." *In re Katrina Canal Breaches Litig.*, 309 F.

App'x 833, 835 (5th Cir. 2009) (per curiam) (citing *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)).

[A] plaintiff's *pro se* status does not excuse a failure to properly effect service of process. *See Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990).

. . . .

[T]he Court should address this argument first. *See, e.g., Dave v. O'Carroll*, No. 22-40653, 2023 WL 2983567, at *2 (5th Cir. Apr. 18, 2023) (per curiam) (whe[n] successfully challenged under Rule 12(b)(5), lack of proper service "means the court never held personal jurisdiction over" the defendant (citations omitted)).

Rule 4 requires that, sued in her individual capacity, Crockett be served with the summons and complaint one of four possible ways: (1) as provided by Texas law for service in its state courts, *see* FED. R. CIV. P. 4(e)(1); (2) by delivering a copy of each personally, *see* FED. R. CIV. P. 4(e)(2)(A); (3) by leaving a copy of each at her "dwelling or usual place of abode with someone of suitable age and discretion who resides there," FED. R. CIV. P. 4(e)(2)(B); or (4) by "delivering a copy of each to an agent authorized by appointment or by law to receive service of process," FED. R. CIV. P. 4(e)(2)(C).

Jefferson provides no evidence that Crockett was served in compliance with one of these four options. And the Court denied Jefferson's January 30, 2025 motion "to validate prior service or, in the alternative, to authorize substituted service of process" as to Crockett, through which Jefferson requested that the Court "deem[] valid" "[t]he prior service of process" as to Crockett (service on her chief of staff and her attorney) or authorize other substitute service. Dkt. No. 27 (cleaned up); *see* Dkt. No. 28 at 2-3 (finding that Jefferson's request for authorization failed to comply with the requirements of Rule 4(e)(1) and Texas Rule of Civil Procedure 106(b)—"For example, even if the motion is supported by a sworn statement, it does not explain how Jefferson attempted to, but did not successfully, serve Crockett by one of the two methods provided in Rule 106(a). And, to the extent that Jefferson requests that the Court authorize substitute service via certified mail, *see* Dkt. No. 27-1 at 2, that is a method explicitly authorized by Texas Rule 106(a).").

Doc. 42 at 4-5, 9-10.

Plaintiff filed objections to the Report, contending as follows:

Service of Process—Plaintiff objects because Crockett's attorney of record did receive service on behalf of Crockett. Any alleged deficiency in service is a direct result of obstruction by Crockett's staff and agents. Plaintiff's process server delivered the summons and complaint to Crockett's Dallas District Office to a staff

member who represented herself as authorized to accept service and stated she
would forward the documents to Crockett.

- Crockett had actual notice of the lawsuit, satisfying the due-process
  purposes of service.
- The magistrate's conclusion ignores Plaintiff's January 30, 2025 motion for
  substitute service (Dkt. 27), which detailed prior service attempts and
  obstruction.
- Under Rule 4(e) and Texas Rule 106(b), courts may authorize alternative
  service when personal delivery is thwarted, especially by intentional
  avoidance.

Doc. 43 at 22. In response to the magistrate judge noting that Plaintiff did not file a response to

Defendant Crockett's Motion to Dismiss, Plaintiff also makes the conclusory unsupported

argument that he was unable to respond "due to injury and intimidation, including interference by

agents and associates of Defendant Jasmine Crockett, who obstructed Plaintiff's ability to serve

and receive legal documents. This obstruction constitutes an independent violation of Plaintiff's

right to access the courts." Doc. 43 at 13.

Defendant Crockett filed a response in opposition to the Plaintiff's objections. With respect

to service, she asserts:

Plaintiff's objections simply rehash the arguments he made in opposing Ms.
Crockett's motion. He asserts that he delivered the summons and complaint to Ms.
Crockett's Congressional District Office, Objections, Dkt. No. 43 at 22, but as
noted, Plaintiff himself acknowledges in his Complaint that Ms. Crockett is not
being sued in her capacity as a Member of Congress. Plaintiff contends that the
Magistrate Judge ignored Plaintiff's earlier Moton for Substitute Service, Dkt. 27,
which the Court had denied. Dkt. No. 28. But the Magistrate Judge directly
addressed and acknowledged that earlier Motion and the Court's denial of that
Motion. Magistrate's Report at 9-10.

"An objection that does 'nothing more than state a disagreement with the
magistrate's suggested resolution or simply summarizes what has been presented
before, is not an "objection"' under Rule 72(b)." *Moore v. NBC Universal Media,
LLC*, No. 4:24-cv-01120-O-BP, 2025 U.S. Dist. LEXIS 12019 at *1 (N.D. Tex.,
July 7, 2025)(quoting Cuza v. Day, No. 22-cv-1354, 2023 U.S. Dist. LEXIS 78600
at *1 E.D. La., May 5, 2023)). In this case, Plaintiff has done nothing more than
restate what he presented before. The Court should accept the Magistrate Judge's

recommendation that Ms. Cockett's Motion to Dismiss for insufficient service be granted.

Doc. 44 at 2-3.

Pursuant to Federal Rule of Civil Procedure 4(e)(1), an individual may be served by "following state law for serving a summons" or in one of the three ways identified in Rule 4(e)(2). Texas law applies and permits service by personal service or certified mail. Tex. R. Civ. P. 106(a). Rule 106 also authorizes a court to order substituted methods of service. Only after service by one of the two methods provided in Rule 106(a) fails, may a court, upon motion supported by proper affidavit, authorize substitute service. *See State Farm Fire & Cas. Co. v. Costley*, 868 S.W.2d 298, 298-99 (Tex. 1993). "[S]ubstitute service is not authorized . . . without an affidavit which meets the requirements of the rule demonstrating the necessity for other than personal service." *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990).

Contrary to Plaintiff's contention, the magistrate judge's Report does not ignore his prior request to serve Defendant Crockett via substitute service. The Report acknowledges this request by Plaintiff and explains that the motion was denied because Plaintiff failed to show that he previously attempted to serve Defendant Crockett by one of the two methods provided in Rule 106(a) in accordance with Rule 4(e)(1). The magistrate judge's January 30, 2025 Order (Doc. 28) denying Plaintiff's motion similarly states that, "even if the motion is supported by a sworn statement, it does not explain how Jefferson attempted to, but did not successfully, serve Crockett by one of the two methods provided in Rule 106(a)." Doc. 28 at 2. The magistrate judge, therefore, denied without prejudice Plaintiff's request to serve Defendant Crockett by substitute service. Thereafter, Plaintiff did not move again to serve Defendant Crockett by substituted service, and there is no indication in the record that he has attempted to cure the service deficiencies previously identified by the magistrate judge. While Plaintiff appears to argue in his objections that he was

not required to comply with Rule 106(a) or that he has done so, he has not met his burden of showing that he previously attempted to serve Defendant Crockett by one of the two methods provided in Rule 106(a), and his assertion that Defendant Crockett or her agent's obstructed any such efforts by him is conclusory and unsupported. For this reason and because Plaintiff has not shown that he has effected service as to Defendant Crockett in accordance with either Rule 4(e)(1) or (e)(2), the court agrees with the magistrate judge and Defendant Crockett that it lacks jurisdiction over Defendant Crockett because she has not been properly served. Plaintiff's objections are, therefore, **overruled**.

Accordingly, the court determines that the findings and conclusions of the magistrate judge with respect to Defendant Crockett's Motion to Dismiss pursuant to Rule 12(b)(5) are correct, and **accepts** them, **as supplemented,** as those of the court; **grants** Defendant Crockett's Motion to Dismiss (Doc. 29) on this ground; and **dismisses without prejudice** all claims by Plaintiff against her pursuant to Rule 12(b)(5).

## VI.    Plaintiff's Motion to Set Aside Voluntary Nonsuit (Doc. 38)

In his Motion to Set Aside Voluntary Nonsuit (Doc. 38), filed February 27, 2025, Plaintiff acknowledges that he voluntarily dismissed all claims against Governor Greg Abbott on January 24, 2025, but he contends that he did so based on "his understanding that the Governor's office would publicly certify the election results as required by 2 U.S.C. § 382," and he "has since received written confirmation from the Governor's legal counsel . . . that no further action will be taken" by Governor Abbott in this regard.  Doc. 38 at 2 (citing Pl.'s Ex. 1, Doc. 38-1 at 8).  Plaintiff contends that Governor Abbott's refusal to certify the election results as promised violates his constitutional rights because his "inaction obstructs [his] right to contest the election." Doc. 38 at 2, 9. Plaintiff further contends that, because his decision to voluntarily dismiss all claims against

Governor Abbott was "predicated on [a] misrepresentation" that Governor Abbott would certify the election results, his Notice of Nonsuit (Doc. 20), which voluntarily dismissed with prejudice all of his claims against Governor Abbott pursuant to Federal Rule of Civil Procedure 40(a)(1)(A)(i), should be set aside under Federal Rule of Civil Procedure 60(b). For support, he relies on e-mails that he exchanged with Governor Abbott's legal counsel between January 10, 2025, and February 26, 2025.

As herein explained, the parties agree that Rule 60(b) applies to Plaintiff's request to set aside his voluntary dismissal of all claims against Governor Abbott. The magistrate judge, however, reached a different conclusion. The court, therefore, begins its analysis with this issue and determines that Rule 60(b) is the appropriate procedural vehicle for addressing Plaintiff's Motion to Set Aside Voluntary Nonsuit.

Rule 41(a)(1) "on its face grants a plaintiff an unconditional right to dismiss his complaint by notice and without order of the court at any time prior to the defendant's service of an answer or motion for summary judgment." *Yesh Music v. Lakewood Church*, 727 F.3d 356, 359 (5th Cir. 2013) (citation omitted). Rule 41(a) expressly applies to "actions," not claims. Fed. R. Civ. P. 41(a). Thus, Rule 41(a) cannot be used "to dismiss only some claims a plaintiff has against a defendant," but the Fifth Circuit has "allowed full dismissals of all claims against a defendant [under this rule] even when other defendants remained in the suit." *CBX Res., L.L.C. v. ACE Am. Ins. Co.*, 959 F.3d 175, 177 (5th Cir. 2020) (citations omitted); *Williams v. Seidenbach*, 958 F.3d 341, 344-45 (5th Cir. 2020) (en banc) (same). Unless stated otherwise, voluntary dismissals under Rule 41(a)(1) are presumed to be without prejudice the first time a plaintiff voluntarily dismisses his claims. *Yesh Music*, 727 F.3d. at 359. Voluntary dismissals under Rule 41(a)(1)(A)(i) "require no judicial action or approval and are effective automatically upon filing." *Id.* at 361.

Rule 60(b) allows a party to seek relief from a "final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). In *Yesh Music*, the Fifth Circuit concluded that voluntary dismissals under Rule 41(a)(1)(A) qualify as "final proceedings" for purposes of Rule 60(b) such that a district court has jurisdiction to grant relief under this rule if warranted to set aside a voluntary or stipulated dismissal. *See id.* at 362-63 & n.16. Unlike this case in which Plaintiff only voluntarily dismissed all claims against one of several Defendants, the plaintiff in *Yesh Music* voluntarily dismissed without prejudice an entire action against the sole defendant.

The court, nevertheless, determines that this distinction does not preclude application of Rule 60(b) to Plaintiff's request to set aside the voluntary dismissal of his claims against Governor Abbott because such dismissal was with prejudice. *See* Doc. 20 at 1 ("Plaintiff . . . files this Notice of Nonsuit with Prejudice[.]"); Doc. 20 at 4 ("Plaintiff nonsuits with prejudice all claims against Defendant Governor Gregg Abbott[.] . . . No further relief is sought from the Governor in this matter."). Dismissal with prejudice is synonymous with a final judgment or "adjudication on the merits." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505-06 (5th Cir. 2001). The Fifth Circuit in *Williams v. Seidenbach*—a case in which the plaintiff voluntarily dismissed without prejudice all claims against one of two defendants—noted that the "finality trap" or inability to obtain an appealable final decision after subsequently losing to the second defendant on summary judgment—can be avoided when a plaintiff "voluntarily dismiss[es] a defendant *with* prejudice," which is precisely what Plaintiff did here when he dismissed with prejudice all claims he had against Governor Abbott. *Id.* at 344. Based on the forgoing reasoning, the court determines that Plaintiff's voluntary dismissal with prejudice of all claims against Governor Abbott qualifies as a final proceeding for purposes of Rule 60(b) even though such dismissal only finally resolved

his claims against one of the several Defendants in this case.[15]  To the extent that the magistrate judge reached a different conclusion—that the lack of finality precludes review of Plaintiff's voluntary dismissal of his claims against Governor Abbott under Rule 60(b) because the entire action was not dismissed—the Report is **rejected.**  *See* Doc. 42 at 15.  For the reasons that follow, however, the court agrees with and **accepts, as supplemented,** the magistrate judge's reasoning and recommendation that Plaintiff's Motion to Set Aside Voluntary Nonsuit should be denied.

Rule 60(b) applies to motions made more than 28 days but not more than one year after the date of a final judgment, order, or proceeding.  *See* Fed. R. Civ. P. 60(c).  Rule 60(b) allows the court to relieve a party from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(l)-(6).  Thus, Rule 60(b)(1)-(5) "empowers the district court to grant relief because of a mistake, surprise, newly discovered evidence, fraud, or a void or discharged judgment," whereas Rule 60(b)(6) "permits vacatur for 'any *other* reason that justifies relief.'" *Yesh Music*, 727 F.3d. at 363 (emphasis added).  While "Rule 60(b)(6) "is a grand reservoir of equitable power to do justice in a particular case[,]" the Fifth Circuit has "narrowly circumscribed its availability, holding that Rule 60(b)(6) relief 'will be granted only if extraordinary circumstances are present.'" *Id.* (citation omitted). Consequently, Rule 60(b)(6) requires a showing

---

[15] The court notes that Governor Abbott agrees, for reasons similar to those advanced here by the undersigned, that Rule 60(b) applies to Plaintiff's request to set aside the voluntary dismissal of his claims. *See* Doc. 40 at 3-4.  Likewise, although Plaintiff does not expressly object to the magistrate judge's determination that Rule 60(b) does not apply to his Motion to Set Aside Voluntary Nonsuit, he continues to maintain in his objections to the Report that Rule 60(b) is applicable and only objects to the magistrate judge's recommendation that the court deny his Motion to Set Aside Voluntary Nonsuit. *See* Doc. 43 at 30, 35.

of "manifest injustice" and cannot be used to relieve a party from the "free, calculated, and deliberate choices he has made." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350 (5th Cir. 1993). Whether relief should be granted under Rule 60(b) is left to the "sound discretion of the district court." *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007) (citation omitted).

Relying on Rule 60(b)(1), (3), and (6), Plaintiff asserts:

> Courts have held that a nonsuit may be set aside whe[n] it was obtained based on misrepresentations or in reliance on a government official's promise to act. *See Quanto Intern. Co., Inc. v. Lloyd*, 897 S.W.2d 482 (1995). Similarly, the failure of a state official to publicly certify election results, as required under 2 U.S.C. § 382, constitutes obstruction, warranting relief under Rule 60(b). Furthermore, due process concerns arise when state officials fail to comply with legally mandated election procedures, as established in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), which recognizes that government inaction preventing a party from asserting statutory rights is an actionable violation of due process.

Doc. 38 at 3. According to Plaintiff:

> The Governor's attorney, on his behalf, created a reasonable expectation that the election results would be publicly certified, as evidenced in the email thread dated January 15, 2025 (Exhibit 1). Plaintiff relied on these representations in filing the nonsuit. Because the Governor has now refused to act, Plaintiff's nonsuit was filed under false pretenses, warranting relief under Rule 60(b)(3).

> The misleading nature of these representations constitutes fraud upon the court and justifies immediate relief to ensure Plaintiff's rights are not further violated. Furthermore, the withholding of legally required certification hinders transparency and accountability in the election process. The Governor's refusal to complete this ministerial act constitutes a manipulation of procedural formalities that obstructs Plaintiff's right to challenge an election in a fair and timely manner.

Doc. 38 at 4-5.

Plaintiff further asserts:

> Under 2 U.S.C. § 382, a notice of contest must be filed within 30 days after election results are publicly declared. The Governor's failure to issue the required public proclamation obstructs Plaintiff's right to file a federal election contest. Plaintiff relied on the requirements set forth in (Exhibit 2), which mandates that election

results must be publicly declared to trigger the contest period. Additionally, Plaintiff received an email on January 15, 2025 (Exhibit 3), confirming that the proclamation of election results was issued but not made publicly available.

. . . This obstruction has caused Plaintiff undue prejudice and has hindered the ability to initiate a federal election contest within the prescribed timeframe. The delay in certifying results has not only created a barrier to the Plaintiff's ability to challenge the election but has also led to confusion among voters and other stakeholders regarding the official outcome of the election.

Doc. 38 at 4.[16]

Regardless of the legal standard applied to Plaintiff's Motion to Set Aside Voluntary Nonsuit, the magistrate judge concluded that Plaintiff is not entitled to have the voluntary dismissal of his claims against Governor Abbott set aside. The magistrate judge reached this conclusion because the parties' evidence of e-mail communications clearly reflects that Plaintiff dismissed with prejudice his claims against Governor Abbott *after* being told that Governor Abbott would not take any further action with respect to Plaintiff's requests after providing Plaintiff with a copy of the certificate certifying the November 4, 2024 election results. The court agrees. Therefore, the court determines that the findings and conclusions of the magistrate judge in this respect are correct, and **accepts** them, **as herein supplemented,** as those of the court.

The parties' evidence reflects that, after the November 5, 2024 general election in which Defendant Crockett was elected to serve as the United States Representative for the 30th Congressional District of Texas, and after Plaintiff filed this action in December 2024, Plaintiff reached out to Governor Abbott on January 10, 2025, in an effort to obtain certain information regarding the general election and Democratic primary. The information requested by Plaintiff included: (1) a copy of the "proclamation officially declaring the [general] election results" as required by § 67.016 of the Texas Election Code; and (2) information pertaining to the pre-election

---

[16] Exhibit 2 to Plaintiff's Motion to Set Aside Voluntary Nonsuit is simply a copy of 2 U.S.C. §§ 382-396.

**Memorandum Opinion and Order – Page 42**

certification of Congressional District 30 candidates under Texas law. In addition, Plaintiff requested that Governor Abbott rescind Defendant Crockett's certification as the Democratic candidate and change his status "from rejected to accepted in the Democratic Primary." Doc. 40-1 at 3.  In exchange, Plaintiff stated that he would be willing to dismiss all of his claims against "all of your clients" in this lawsuit.  *Id.* at 4.  Plaintiff's reference to "all of your clients" appears to mean all Defendants except Jasmine Crockett, even though certain Defendants are county rather than state officials.

On January 15, 2025, Assistant Attorney General Anthony Dolcefino responded as follows and provided Plaintiff with a copy of a statement (signed by Government Abbott and Texas Secretary of State Jane Nelson on November 25, 2024) certifying the November 5, 2024 election results for the state and district races, including Congressional District 30:

Mr. Jefferson,

Pursuant to Section 67.013 of the Texas Election Code, the Governor conducted the canvass of the November 5, 2024 general election on November 25, 2024. At the canvass, the Governor signed the attached statement certifying the results of state and district races on the November 5 ballot, including Congressional District 30.

Section 67.016 of the [Texas] Election Code relates to the preparation of a certificate of election for each candidate elected to an office encompassed by a particular canvass-in this case, state and district offices in the November 5, 2024 election. Certificates of election—signed by the Governor and attested to by the Secretary of State—were issued to Jasmine Crockett and all other individuals who won election to their respective state or district offices in the general election.

While the Governor signed and SoS assisted in preparing and issuing the certificates of election to Congresswoman Crockett and other elected officers (per Section 67.016), their offices do not maintain copies of those certificates after they have been delivered.

Doc. 38-1 at 39-41; Doc. 40-2 at 1.

On January 24, 2025, at 4:22 p.m., Plaintiff responded, stating that he "need[ed] clarification on a few points before" nonsuiting Governor Abbott, including whether Governor Abbott intended to "declare the results [of the November 5, 2024 election] publicly, as required by FECA[,]" and whether he would decertify the election results with respect to Jasmine Crockett.[17] Doc. 38-1 at 8-9; Doc. 40-3 at 1. Plaintiff advised that, "[o]nce I receive clarification, I will proceed to nonsuit the Governor separately to honor my word. You can expect to see the nonsuit filed shortly." *Id.*

Mr. Dolcefino responded a few minutes later at 4:25 p.m. and explained that no additional action would be taken by Governor Abbott: "The Governor is taking no further action at this time. From my understanding, you needed the certification from the Governor's office to nonsuit him. There is no further relief the Governor can provide relating to the election challenge." Doc. 38-1 at 9; Doc. 40-3 at 1. Mr. Dolcefino, nevertheless, expressed the hope that Plaintiff would still dismiss his claims against Governor Abbott. Later that same evening at 11:39 p.m. on January 24, 2025, Plaintiff did just that by filing his Notice of Nonsuit (Doc. 20). Thus, Plaintiff voluntarily dismissed with prejudice all claims he had against Governor Abbott, and stated that "[n]o further relief is sought from the Governor in this matter" with full knowledge that Governor Abbott had no intention of providing him with any additional information or taking any further action with respect to Plaintiff's prior requests for information or action regarding the November 4, 2024 election results and pre-election certification of Democratic candidates.

---

[17] FECA is the acronym for the Federal Election Campaign Act, 52 U.S.C. § 30101 *et seq*. FECA governs and applies to political contributions in federal elections. The court was unable to find any legal authority that states that FECA includes statutory requirements applicable to declaring or certifying election results, so it is unclear why Plaintiff referenced FECA in his e-mail to Mr. Dolcefino. *See Citizens for Resp. & Ethics in Washington v. Federal Election Comm'n*, 904 F.3d 1014, 1016 (D.C. Cir. 2018) (citing and discussing 52 U.S.C. § 30101 *et seq.*). It appears that Plaintiff may have meant to reference the Federal Contested Elections Act or FCEA, as he does in his Notice of Nonsuit (Doc. 20).

Plaintiff also acknowledged in his Notice of Nonsuit that he was dismissing his claims against Governor Abbott even though he had only received "partial relief" or "part of the relief initially sought from the Governor" in the form of the November 24, 2024 election results certification. Doc. 20 at 2. Plaintiff's inclusion in the Notice of Nonsuit of the self-serving and disingenuous statement that—"[he] files this nonsuit in good faith that the Governor will fulfill his ministerial duties by ensuring that the certification is publicly declared, as required by federal law [2 U.S.C. 382]"—does not change the fact that he dismissed with prejudice all claims against Governor Abbott while being fully aware that Governor Abbott had no intention of providing him with any additional information or taking any further action with respect to his prior requests regarding the November 4, 2024 election results and pre-election certification of Democratic candidates. *Id.*

Given the undisputed and unequivocal statement by Mr. Dolcefino that no further action would be taken by Governor Abbott, the evidence relied on by Plaintiff does not support his contention that he was misled by any misrepresentation of Governor Abbott's counsel whether additional information or action would be forthcoming. Likewise, the parties' communications do not support a finding that Plaintiff's decision to dismiss with prejudice his claims against Governor Abbott was the product of mistake, inadvertence, surprise, or excusable neglect. To the contrary, this evidence demonstrates that Plaintiff's decision was made knowingly and voluntarily. Additionally, because Governor Abbott's position was clearly expressed to Plaintiff before he filed his Notice of Nonsuit, the parties' communications do not support a finding that Governor Abbott or his counsel made "assurances" to Plaintiff that any additional information or action would be forthcoming after Mr. Dolcefino's January 24, 2025 e-mail. Doc. 43 at 30. Thus, any alleged reliance by Plaintiff on such representations, *see id.*, or actions allegedly taken by him in "good

faith" that more information would be provided or more action would be taken by Governor Abbott if Plaintiff dismissed his claims against Governor Abbott is simply not supported by the parties' evidence. *See* Doc. 20 at 2.

In his objections to the Report, Plaintiff also contends that a January 17, 2025 e-mail supports his contention, belief, and understanding that additional information or materials would be provided by Governor Abbott. According to Plaintiff, Governor Abbott's counsel stated as follows in the January 17, 2025 e-mail: "I wanted to check in after our call to see what remaining item(s) are needed from SoS to get them out of the lawsuit. Please let me know what materials you need from SoS and I will make sure a search gets done!" Doc. 43 at 29. Plaintiff cites the appendix to his Motion to Set Aside Voluntary Nonsuit, but the court was unable to locate the e-mail in this appendix or the appendix to Plaintiff's objections.

Even accepting as true this assertion by Plaintiff, it does not change the court's prior determination regarding the knowing and voluntary nature of his decision, as the alleged statement by Governor Abbott's counsel on January 17, 2025, *preceded* the e-mail and unambiguous statement by Governor Abbott's counsel on January 24, 2025—that "*[t]he Governor is taking no further action at this time.* From my understanding, you needed the certification from the Governor's office to nonsuit him. *There is no further relief the Governor can provide relating to the election challenge*." Doc. 38-1 at 9; Doc. 40-3 at 1. Additionally, as noted, the parties' communications indisputably establish that Plaintiff filed his Notice of Nonsuit several hours *after* being made aware that no further action would be taken by Governor Abbott. Accordingly, the evidence does not support Plaintiff's request for relief under Rule 60(b)(1) or (3) based on alleged fraud by Governor Abbott or inadvertence/mistake by Plaintiff.

Plaintiff's request for relief under Rule 60(b)(6) fares no better. As explained, the broad equitable power granted courts under Rule 60(b)(6) "is not for the purpose of relieving a party from *free, calculated, and deliberate choices* he has made." *In re Pettle*, 410 F.3d 189, 192 (5th Cir. 2005) (emphasis added) (quoting *Edward H. Bohlin Co.*, 6 F.3d at 356-57); *see also Ackermann v. United States*, 340 U.S. 193, 198 (1950). Stated differently, when a litigant like Plaintiff "makes a considered choice . . . he 'cannot be relieved of such a choice [under Rule 60(b)] because hindsight seems to indicate to him' that, as it turns out his decision was 'probably wrong'" or ill-conceived. *In re Pettle*, 410 F.3d at 193 (alteration in original) (citation omitted). Instead, "[a] party remains under a duty to take legal steps to protect his own interests." *Edward H. Bohlin*, 6 F.3d at 357.

That Plaintiff is proceeding pro se is inconsequential under the circumstances given the undisputed and unambiguous statements by Governor Abbott's counsel that preceded his decision to voluntarily dismiss with prejudice all claims against Governor Abbott. Moreover, the record in this case and publicly available information reflect that Plaintiff is no stranger to litigation or legal actions involving election contests and constitutional matters, as he has initiated a number of lawsuits and election contests in the past, including those in which he has asserted similar claims or sought similar relief. *See* Doc. 29 at 7-9 (summarizing various election related lawsuits by Plaintiff); Doc. 43-1 at 13-944 (concerning Plaintiff's efforts to contest the November 4, 2024 election results based on his familiarity with federal election and constitutional law); *see also Jefferson v. Sam's East, Inc.*, 2025 WL 1692883 (May 9, 2025) (lawsuit brought by Plaintiff pursuant to 42 U.S.C. § 1983 for alleged constitutional violations).

Thus, neither Plaintiff's pro se status nor the circumstances surrounding his decision to voluntarily dismiss all claims against Governor Abbott qualify as "extraordinary" as required to

warrant relief under Rule 60(b)(6), particularly since he fails to point to any basis for relief separate from that sought under subsections (1) and (3) of Rule 60(b). *See Curtis v. Brunsting*, 860 F. App'x 332, 335-35 (5th Cir. 2021) (affirming denial of request for relief under Rule 60(b)(6), reasoning that the pro se plaintiff's allegations of fraud did not support the type of "extraordinary circumstances" warranting relief under subsection (b)(6) because fraud is covered by subsection (b)(3), the relief available under subsection (b)(6) is "mutually exclusive from the relief available under [sub]sections (1)-(5)," and the plaintiff had knowledge of the matters of which he complained).

Accordingly, Plaintiff's objections to the Report with respect to his Motion to Set Aside Voluntary Nonsuit are **overruled** and his Motion to Set Aside Voluntary Nonsuit (Doc. 38) is **denied.** Whether, as Plaintiff argues, that Governor Abbott was required, under 2 U.S.C. § 382, to ***publicly*** declare the results of the November 4, 2024 election, and whether Plaintiff was denied due process because Governor Abbott allegedly failed to publicly declare such election results as required by federal law does not affect the court's ruling and reasons for denying the Motion to Set Aside Voluntary Nonsuit filed by Plaintiff. The court understands that, in contesting the November 4, 2024 election results and arguing that his election contest was timely, Plaintiff asserted that his thirty-day deadline to file an election contest under 2 U.S.C. § 382 did not run until thirty days after the results of the election were ***publicly*** certified.[18] *See* Doc. 43-1 at 13-44. The resolution of this legal issue has no relevance here, however, to whether Plaintiff is entitled to relief under Rule 60(b) in the form of an order setting aside the voluntary dismissal with prejudice

---

[18] According to the evidence submitted by Plaintiff in support of his objections to the Report, this argument was rejected by the United States House of Representative's Committee on House Administration responsible for handling election contests under 2 U.S.C. § 382. *See* Doc. 43-1 at 42-44. On April 9, 2025, the Committee on House Administration issued a Report dismissing as untimely the election contest filed by Plaintiff on January 3, 2025, with respect to Jasmine Crockett. *Id.* The Report reasoned that the statutory deadline to file a notice of contest expired on December 25, 2024, thirty days after Governor Abbott and Texas Secretary of State Jane Nelson certified the election results on November 25, 2024. *Id.*

**Memorandum Opinion and Order – Page 48**

of his claims against Governor Abbott. The court, therefore, need not reach and **declines** to address the merits of this argument by Plaintiff except to note that the legal authority relied on by him in his Motion to Set Aside Voluntary Nonsuit does not support his assertions that Governor Abbott was required to *publicly* declare the election results or do more than he did under the Texas Election Code in certifying the election results.

## VII.    Amendment of Pleadings

The magistrate judge recommended that the court grant all Motions to Dismiss by Defendants without allowing Plaintiff to amend his pleadings because he did not respond to any of the Motions to Dismiss. The magistrate judge nevertheless noted that Plaintiff has an opportunity to show that leave should be granted in his objections to the Report:

> Jefferson failed to respond to the motions to dismiss. But the opportunity file objections to these findings, conclusions, and recommendation (as further explained below) allows him another opportunity to show that, even if the Court grants the motions, it should not dismiss the claims, as applicable, with prejudice, but instead grant leave to amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)).

Doc. 42 at 12-13.

Plaintiff objects and contends that he should be allowed to amend his pleadings because Federal Rule of Civil Procedure Rule 15(a) provides that courts "should freely give leave when justice so requires." Doc. 43 at 28. In addition, he contends that the magistrate judge made no "finding that amendment would be futile. Instead, the recommendation appears to penalize [him] for not attaching a proposed amended complaint while ignoring that Plaintiff lacked the key evidence due to defendants' concealment of election records." *Id.* Plaintiff argues that denying him

leave to amend "in light of newly uncovered evidence, ongoing constitutional violations, and [his] ability to cure any alleged pleading defects would result in manifest injustice and denial of due process." *Id.* In this regard, Plaintiff asserts:

> 80. Ongoing Violations and New Evidence—Since filing the original complaint, new evidence has emerged showing:
> - The Governor never publicly declared the election results as required by law;
> - State and party officials coordinated to fraudulently certify Crockett while knowing she was non-compliant;
> - Emails and official notices confirm joint participation between Crockett and state-authorized election officials to remove Plaintiff from the ballot;
> - The House Administration Committee's handling of Plaintiff's contest was tainted by reliance on false dates and procedural misstatements.
>
> 81. Prospective Relief and Cure of Defects—Plaintiff's proposed amendments would:
> - Clarify that he seeks prospective injunctive and declaratory relief to prevent ongoing violations of the First and Fourteenth Amendments, not retroactive reversal of the 2024 general election;
> - Add newly discovered documentary evidence of fraud, conspiracy, and discriminatory enforcement;
> - Add factual allegations showing that service of process was adequate or that any deficiency was due to intentional evasion;
> - Add causes of action for conspiracy to violate civil rights under 42 U.S.C. § 1985(3).

Doc. 43 at 27-28.

Plaintiff further asserts that his failure to respond to Defendants' Motions to Dismiss was due to circumstances beyond his control:

> 79. Failure to Consider Circumstances Preventing Timely Responses—Plaintiff objects because the magistrate fails to consider the extraordinary circumstances that prevented timely responses to the motions to dismiss, including:
> - Plaintiff was physically attacked during this time period;
> - Plaintiff was simultaneously dealing with obstruction by the Governor's Office, Secretary of State, Texas Democratic Party officials, and the U.S. House Administration Committee, all conspiring to block his ability to contest the fraudulent certification of Defendant Crockett.
> - The certification and canvass records were intentionally withheld until after the purported 30-day contest deadline, depriving Plaintiff of the opportunity to act sooner.

*Id.* at 27-28.

**Memorandum Opinion and Order – Page 50**

The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings under Rule 15(a)(2), a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

Consideration of these factors weigh against allowing Plaintiff to amend his pleadings. Plaintiff seems to argue that his decision to not respond to Defendants' Motions to Dismiss should not be held against him in deciding whether he should be allowed to amend. As noted, Plaintiff could have simply requested an extension of time if he needed more time to file a response to the Motions to Dismiss. Plaintiff quotes Rule 15 and thus is apparently familiar with it. He fails to explain, though, why he was unable to move for an extension of his response deadline. As he has not previously amended his pleadings, Plaintiff also could have avoided responding at all by simply filing an amended complaint without leave of court within 21 days of the Motions being filed in accordance with Rule 15(a), which would have mooted them. Instead, Plaintiff waited until objecting to the Report before asserting for the first time that he should be allowed to amend his pleadings.

Moreover, Plaintiff's objections to the Report fail to adequately explain how he would cure the defects identified by Defendants' Motions and the magistrate judge's Report. Plaintiff's objections to the Report have all been overruled to the extent relevant to the court's analysis of Defendants' Motions. Plaintiff argues that Defendants refused or failed to provide him with

requested documents needed to respond to the Motions while also arguing that he now has newly discovered evidence that will allow him to amend his pleadings. At the pleading stage, evidence is irrelevant to the issue of whether he has stated any plausible claims upon which relief can be granted. As before, his assertions in this regard are either irrelevant or entirely conclusory and do not explain what additional facts he would plead if given the opportunity.

Plaintiff repeatedly asserts that Defendants have engaged in fraudulent conduct, but such assertions are conclusory in that there is no factual basis to support them. Plaintiff's contentions about Governor Abbott not publicly declaring the elections results and the House's handling of his election context against Defendant Crockett have no apparent relevance to the claims he has asserted in this action. Plaintiff identified in his objections what he believes constitutes prospective relief, but his argument in this regard was overruled by the court. His objections reference discrimination, but there are no allegations in his Complaint regarding discrimination, and he does not provide any factual basis that could plausibly support a claim based on discrimination in his objections to the Report. Plaintiff also contends that, if allowed to amend, he could provide additional facts to show service of process was adequate with respect to Defendant Crockett or that any deficiencies in service were "due to intentional evasion," but he had an opportunity to provide such facts in response to the Report and failed to do so. Finally, as noted, Plaintiff suggests that he would amend to add a new section 1985(3) claim[19] for civil rights violations if given the opportunity, but he does not explain the factual basis for any such claim.

Thus, despite being given ample opportunity, Plaintiff has not adequately explained how he would amend his pleadings; nor has he shown how he would serve Defendant Crockett if given

---

[19] Section 1985 pertains to conspiracy to interfere with civil rights, whereas section 1985(3) involves the deprivation of a person's rights or privileges.

a further extension of time despite not having done so previously during the eleven months that this action has been pending. Accordingly, the court determines that Plaintiff has pleaded his "best case" and amendment would be futile with respect to his claims against Defendants Coleman (in his official and individual capacities), Nelson (in her official capacity), and Adkins (in her official capacity). The court, therefore, **denies** Plaintiff's request to amend with respect to his claims against these Defendants. The court further determines that Plaintiff has not shown good cause for a further extension of time to effect service as to Defendant Crockett or to show that he has effected service as to her and **denies** any such request by him. Additionally, giving Plaintiff further opportunities to cure the foregoing pleading and service defects would unnecessarily delay the resolution of this litigation.

## VIII. Plaintiff's Request for a Hearing

In his objections to the Report, Plaintiff requests a an "Oral Hearing" (Doc. 43 at 36-37), arguing that:

> 97. An oral hearing is necessary in the interest of justice to allow Plaintiff to fully and fairly present his constitutional claims, clarify the factual record, and ensure that his rights to due process, equal protection, and access to the courts are fully protected.
>
> 98. This case involves complex issues of constitutional law, jurisdiction, fraud, election law, and violations of the Federal Rules of Civil Procedure, as well as rulings and orders issued by this Court and by United States Magistrate Judge David L. Horan. An oral hearing will aid the Court in understanding the severity of the constitutional and procedural violations at issue and will allow Plaintiff to respond directly to the erroneous findings and recommendations contained in Document 42 and related orders in this matter.
>
> 99. The Supreme Court has long recognized that due process requires not merely notice but also the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982). Denying Plaintiff the opportunity to be heard through an oral hearing would directly violate these core constitutional principles of fairness and justice.

Doc. 43 at 36-37.

In federal court, motions are typically decided based on the parties' written briefs and other submissions. Here, Plaintiff had an opportunity to file written responses to the Motions to Dismiss filed by Defendants and an opportunity to brief his Motion to Set Aside Voluntary Nonsuit. In addition, he had the opportunity to file objections to the Report, and he filed extensive objections. Thus, Plaintiff was given an adequate and meaningful opportunity to be heard before the court ruled on the pending motions and Plaintiff's objections to the Report. Moreover, Rule 12(b)(6) motions are decided based on the pleadings, not evidence, so the court sees no need for a hearing. The court, therefore, **denies** Plaintiff's request for a hearing.

## IX.    Plaintiff's Objection (Doc. 37) to Pro Hac Vice Application

As noted, Plaintiff objected to the pro hac vice application filed by Ms. Crockett's counsel (Doc. 33), which was granted by the magistrate judge (Doc. 36). In his forty-five page objection, Plaintiff contends that counsel was required but failed to confer with him before filing the pro hac vice application. Plaintiff contends that the court has applied a "double standard" in strictly enforcing procedural rules against him as a pro se litigant in comparison to the attorneys who represent Defendants in this action. Doc. 37 at 2. In addition, Plaintiff used this objection as an opportunity to request unrelated relief: "Plaintiff **requests an order requiring the public declaration of the November 5, 2024[] election results**, as the Governor has refused to publicly release the certification, obstructing Plaintiff's ability to contest the election under **2 U.S.C. § 382** and the **Federal Contested Elections Act (FECA) [sic]**." *Id.* at 2 (emphasis in original). Plaintiff asserts that, "[w]ithout this declaration, [his] right to challenge the election results is unreasonably restricted, creating an undue burden on his ability to seek redress." *Id.*

The court **overrules** Plaintiff's objection (Doc. 37) to the extent that he argues that counsel was required but failed to confer with him before filing the pro hac vice application. Pro hac vice applications are rarely opposed, but even if counsel was required to and failed to confer in accordance with this District's Local Civil Rules, Plaintiff has not asserted or shown that he suffered any legal prejudice as a result. Plaintiff also fails to point to any ruling or instance in this case when the magistrate judge or the undersigned applied a "double standard," requiring strict adherence by him to the Local Civil Rules in comparison to Defendants' counsel.

To the extent Plaintiff's objection and response to the pro hac vice application includes—(1) a request by him for the court to enter an order requiring Governor Abbott to publicly declare the November 4, 2024 election results; and (2) extensive argument by him that Governor Abbott was required to make such a public declaration, and that his prior refusal to do so prevented Plaintiff from timely contesting the election results within the time provided by 2 U.S.C. § 382—the court **declines** Plaintiff's request and invitation to weigh in on this issue, which is not relevant to any claims asserted by Plaintiff in his Complaint against Governor Abbott or any other Defendant, and the court has already denied Plaintiff's request to revive his claims against Governor Abbott.

Moreover, while Plaintiff disputes Defendants' contentions that this action by him is actually an election contest (disguised as one for declaratory and injunctive relief) over which the United States House of Representatives has final and exclusive jurisdiction,[20] the relief sought by

---

[20] In this regard, Defendants Nelson and Adkins argued as follows in their Motion to Dismiss:

> The Texas Election Code clearly outlines that its provisions surrounding jurisdiction for election contests "[do] not apply to: (1) a general or special election for the office of . . . United States representative." *See* Tex. Elec. Code § 221.001. Rather, contests for seats in the United States House of Representatives are governed by the Federal Contested Elections Act, 2 U.S.C. §§381 *et seq.* Article I, Section 5, Clause 1 of the United States Constitution states that "Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members." *In Barry v. U.S. ex rel. Cunningham*, the Supreme Court referred to this power of each House of Congress as "sole authority

him in response to the pro hac vice application overlaps with the issue previously decided and rejected on April 9, 2025, by the United States House of Representative's Committee on House Administration, which dismissed Plaintiff's election contest with respect to Ms. Crockett as untimely. The election contest was dismissed notwithstanding Plaintiff's contentions that his deadline to file a notice of contest under section 382 had not expired yet because, according to him, the deadline to contest the November 4, 2024 election ran from the date that the election results were **_publicly_** declared, which he argued had not occurred yet, as opposed to the date the election results were certified by Governor Abbott on November 25, 2024.  Thus, any order by the court granting the relief requested by Plaintiff would directly conflict with the Committee on House Administration's prior resolution of his unsuccessful election contest and interfere with its authority to judge elections, returns, and qualifications of its own members. *See Morgan v. United States*, 801 F.2d 445, 445-46, 450 (D.C. Cir. 1986) (rejecting contention that the Elections Clause of the United States Constitution or FCEA provides federal courts with authority or "jurisdiction to review the substance *or procedure* of a determination by the [United States] House of Representatives that one of two contestants was lawfully elected to that body.") (emphasis added and citations omitted).

---

under the Constitution to judge of the elections, returns and qualifications of its members." *Barry v. U.S. ex rel. Cunningham*, 279 U.S. 597, 619 . . . (1929). As such, the House of Representatives has final and exclusive jurisdiction to determine election contests relating to its members. *Id.* Plaintiff's attempt to receive injunctive and declaratory relief of this nature is in direct conflict with the procedure outlined by the United States Constitution and federal statute. This Court lacks jurisdiction to hear this challenge, and Defendants have not waived immunity to be sued for such a challenge.

Doc. 21 at 5-6.  Because Plaintiff opted not to file a response to Defendants Nelson's and Adkins' Motion to Dismiss on this particular legal argument, he **waived** the issue by addressing it for the first time in response to the magistrate judge's Report.

X.    **Conclusion**

Having considered the parties' respective Motions, the pleadings, record, file in this case, and the Report, and having conducted a de novo review of the portions of the Report to which objection was made by Plaintiff, the court **accepts in part, as modified and supplemented by this memorandum opinion and order, and rejects in part** the magistrate judge's findings and conclusions (Doc. 42); **overrules** Plaintiff's objections (Doc. 43) to the Report; **denies** the request in his objections to amend his pleadings as to Defendants Coleman, Nelson, and Adkins, and cure service defects as to Defendant Crockett; and **denies** Plaintiff's request for a hearing on his objections.

The court, therefore, **grants** Defendant Coleman's Motion to Dismiss (Doc. 19), and **dismisses with prejudice** all claims by Plaintiff against him in his official and individual capacities; **grants** the Motion to Dismiss by Defendants Nelson and Adkins (Doc. 21) to the extent based on immunity and jurisdictional grounds, and **dismisses without prejudice** all official capacity claims by Plaintiff against Defendants Nelson and Adkin; and **grants** Defendant Crockett's Motion to Dismiss (Doc. 29) to the extent based on insufficient service of process, and **dismisses without prejudice** all claims by Plaintiff against her pursuant to Rule 12(b)(5) for lack of personal jurisdiction. The court also **overrules** the objection (Doc. 37) Plaintiff filed on February 13, 2025, in response to the pro hac vice application filed by Jasmine Crockett's counsel (Doc. 33), which was granted by the magistrate judge (Doc. 36). As a result of the rulings by the court, only Plaintiff's claims against Defendant Adkins in her individual capacity remain.[21]

---

[21] Defendant Adkins did not move to dismiss the claims against her in her individual capacity. These claims, therefore, remain. Because of Plaintiff's conflicting pleadings in this regard, it was not readily apparent upon first glance that he was suing Defendant Adkins in her individual capacity. Accordingly, if Defendant Adkins wishes to file another motion to dismiss these claims, she may do so.

Plaintiff's claims against Gilberto Hinojosa and Crystal Gayden also remain, as these Defendants filed Answers but no motions to dismiss.

It is so ordered this 29th day of September, 2025.

Sam A. Lindsay
United States District Judge